*Distinguishable from murphey v. Carelli, for here city had not control over management of engine, but only over work done by engine.*

[S. F. No. 1544.  In Bank.—December 27, 1900.]

## M. Y. STEWART, Respondent, v. CALIFORNIA IMPROVE-MENT COMPANY et al., Appellants.

NEGLIGENCE—ESCAPE OF STEAM FROM ROLLER HIRED BY CITY—RUNA-WAY—EMPLOYMENT OF ENGINEER—LIABILITY OF EMPLOYER.—An engineer employed and paid by the defendant corporation to manage a steam roller hired by the city from the corporation with the services of its engineer, at a per diem rate, payable to the corporation, for the purpose of rolling and leveling the streets, under the direction of the superintendent of streets, is the servant, not of the city, but of the corporation defend-ant; and the latter is liable for injury caused by the negligence of the engineer in allowing the escape of steam, without warn-ing, in front of plaintiff's horse, thereby causing a runaway, to plaintiff's injury.

ID.—DUTY OF ENGINEER TO GIVE WARNING—LIABILITY OF ENGINEER AND OWNER.—It devolved upon the engineer, having management of the steam roller, and not upon the superintendent of streets, or his foreman, to know whether there was danger in the es-cape of steam through the safety valve, and to give warning in case of such danger; and for injury resulting from his negli-gence in that respect, he and the owner of the engine who put him in charge are responsible.

APPEAL from a judgment of the Superior Court of Ala-meda County and from an order denying a new trial.  W. E. Greene, Judge.

The facts are stated in the opinion of the court.

Chickering, Thomas & Gregory, and B. McFadden, for Appel-lants.

The escape of steam through the safety valve, as incident to the use of the engine, raised no presumption of negligence. (*Hahn v. Southern Pac. R. R. Co.*, 51 Cal. 605; *Omaha etc. Ry. Co. v. Clarke*, 39 Neb. 65; *Howard v. Union Freight Ry. Co.*, 156 Mass. 159; *Duvall v. Baltimore etc. Ry. Co.*, 73 Md. 516; *Wabash etc. Ry. Co. v. Farver*, 111 Ind. 195[1]; *Cincinnati etc. Ry. Co. v. Gaines*, 104 Ind. 326[2]; *Favor v. Boston etc. R. R. Co.*, 114 Mass.

---

[1] 60 Am. Rep. 696.          [2] 54 Am. Rep. 334.

350[3]; *McCarren v. Albany etc. Ry. Co.*, 72 Miss. 1013; *Scaggs v. President etc.*, 145 N. Y. 201; *Dewey v. Chicago etc. Ry. Co.*, 99 Wis. 455; *Macomber v. Nichols*, 34 Mich. 212[4]; *Skinner v. New York R. R.*, 64 N. Y. Supp. 325.) The plaintiff saw plainly that the roller was in a hole, and that the engineer was trying to get it out, and that other teams had stopped, and in driving forward he was guilty of contributory negligence. (*Wilson v. New York etc. R. R. Co.*, 58 N. Y. Supp. 617; 41 N. Y. App. Div. 36.)

Pringle & Pringle, for Respondent.

It was the duty of the engineer to warn the plaintiff of the danger known to the engineer and not to the plaintiff, and his failure to warn was an assurance of safety. (*Mullen v. Glens Falls*, 42 N. Y. Supp. 113; 11 N. Y. App. Div. 275; *Paine v. Rochester*, 37 N. Y. St. Rep. 587; *Pettengill v. Yonkers*, 116 N. Y. 558[5]; *Louisville etc. R. R. Co. v. Schmidt*, 147 Ind. 638; *Cleveland etc. Ry. Co. v. Keely*, 138 Ind. 600; *Chicago etc. Ry. Co. v. Heinrich*, 157 Ill. 388; *Keech v. Rome etc. Ry. Co*, 59 Hun, 617; 13 N. Y. Supp. 149; *Glushing v. Sharp*, 96 N. Y. 677; *Palmer v. New York Cent. etc. R. R. Co.*, 112 N. Y. 241; Buswell on Personal Injuries, sec. 162, p. 249.) The corporation, and not the city, is liable for the negligence of the engineer. (*Coyle v. Pierrepont*, 37 Hun, 379; *Huff v. Ford*, 126 Mass. 24[6]; *Cotter v. Lindgren*, 106 Cal. 602, 607[7]; Wharton on Negligence, sec. 173; *Ames v. Jordan*, 71 Me. 540[8]; *Gerlach v. Edelmeyer*, 88 N. Y. 645.)

VAN DYKE, J.—Action for personal injury. The trial was by the court without a jury. Plaintiff had judgment, from which and from an order denying their motion for a new trial defendants appeal.

The court found that defendant Conger was, on the fourth day of March, 1896, employed by the defendant California Improvement Company as engineer to manage a steam roller owned by said company and used by it in rolling and leveling streets. The said roller was then in the use of the city of

---

[3] 19 Am. Rep. 364.

[4] 22 Am. Rep. 522.

[5] 15 Am. St. Rep. 442.

[6] 30 Am. Rep. 645.

[7] 46 Am. St. Rep. 255.

[8] 36 Am. Rep. 352.

Oakland—the same, with the engineer in charge, having been hired by the city of Oakland from the defendant California Improvement Company. At the time that the accident occurred the roller was being used under the direction of the superintendent of streets of the city of Oakland in rolling and leveling Twelfth street where it forms a dam at the lower end of Lake Merritt; and the court finds that at that time said Twelfth street was the only safe public highway for the passage of vehicles between the eastern and central parts of Oakland, and that the plaintiff was then driving a well trained, steady, and reliable horse on said street. "While the defendant Conger was in charge of said engine, and standing thereon, and in control thereof, steam escaped from the engine through the safety valve in front of plaintiff's horse. It had been necessary to generate all the steam which the engine could safely carry, and that defendant Conger had wrongfully and carelessly failed and neglected to give any warning of the said letting off of steam, or that there was any danger of its escape through the safety valve, although he, the said defendant, saw the danger to the plaintiff and had the opportunity and power to give him warning thereof; and the escaping of the steam so frightened the plaintiff's horse that it became unmanageable and wheeled short around and tilted over plaintiff's cart, and the plaintiff, without any fault on his part, was thrown out and dashed violently upon the ground."

The main contention on the part of the defendant company was and is that the injury to the plaintiff was not caused by its negligence, but if it resulted from any negligence it was upon the part of the city of Oakland. But the court below found that said defendant California Improvement Company had selected the said engineer, and his services were to be paid by said company, and said company had the right to remove him. That the relation of master and servant existed between said defendant company and the defendant Conger, and not between the city of Oakland and defendant Conger. The testimony supports the finding and conclusion of the court below that the injury to the plaintiff was caused by the negligence of the defendants, and not of the city of Oakland. Mr. Miller, at the time superintendent of streets of the city of Oakland,

called as a witness on behalf of the defendants, says: "This roller was in the employ of the city of Oakland the day of this accident. It was hired from the California Improvement Company. Mr. Sherman, my foreman, had charge of the work together with myself." On cross-examination he was asked: "Did Mr. Sherman assume to have such control over the roller as to affect the engine—affect the movements of the engine?" After an objection to such question had been overruled, the witness answered, "I think not. . . . . Nothing was said in the lease of the engine to the city about discharging the engineer. I secured the engine under the authority of the board of public works. We had to have a roller, and this was the most available one. I telephoned to the office of the California Improvement Company that we would like to have their roller upon the Twelfth street dam. They replied that they would have the roller there. We said nothing about anybody to run it, or about the pay. The understanding was that the machine with the fuel and engineer should be supplied at so much per day." And being asked whether, as a matter of fact, the roller, while operating upon the street, was not entirely under the direction of himself or foreman, answered: "Yes, sir. We controlled to the extent of notifying what portion of the street we wanted rolled. I exercised the judgment as to when the road was rolled enough, and when it was not. I did not stipulate as to any particular engineer." This is substantially the testimony in reference to the terms of the contract between the superintendent of streets and defendant California Improvement Company. The company was to furnish the roller and engineer and fuel for so much a day, and the superintendent of streets was to control the movements of the roller by directing as to what portion of the street should be rolled, and when sufficiently rolled. Neither the superintendent of streets nor his foreman presumed to direct the engineer in reference to the management of the engine in regard to the pressure of the steam or how or when it should be applied or shut off, or in reference to the escaping of steam through the safety valve. No one not an engineer or having some knowledge or experience in reference to the management of an engine would assume to direct the engineer in reference to such

matters.   As he was the one to know, and not the superintend-
ent of streets or his foreman, whether there was danger in the
escape of steam through the safety valve, the duty devolved
upon him to give people warning in case there was such dan-
ger; and for injury resulting from negligence in this respect
he and the owner of the engine who put him in charge of the
same would be responsible.

One who should hire a hack and driver from a carriage com-
pany, and in the use thereof should direct on what streets to
drive, where to go and when to stop, and in fact have the en-
tire control of the movements of the carriage, would not there-
by become liable for damages resulting from the negligence of
the driver in the management of his team; the driver is hired
by the carriage company presumably for his fitness in the line
for which he is employed—the same as was the engineer in
this case by the California Improvement Company.   If damages
accrue through his negligence or carelessness, such company
is liable, and not the one who may have hired and used the
carriage.

In *Boswell v. Laird*, 8 Cal. 469,[9] the question here presented
was thoroughly discussed, and in the opinion there it is said:
"The relation between parties to which responsibility attaches
to one for the acts or negligence of the other must be that
of superior and subordinate, or, as it is generally expressed, of
master and servant, in which the latter is subject to the con-
trol of the former.   The responsibility is placed where the
power exists.   Having power to control, the superior or master
is bound to exercise it to the prevention of injuries to third
parties, or he will be held liable.   The responsibility attaches
to the superior, upon the principle *Qui facit per alium facit
per se*.   To determine the responsibility, therefore, it is neces-
sary to ascertain whether the relation existing between the
party charged and the party actually committing the injury be
in fact that of superior and subordinate, or master and servant."
This case was referred to in *Du Pratt v. Lick*, 38 Cal. 691, as
laying down the correct rule on this subject.   The court there
say: "That where there is no power of selection or direction

[9] 68 Am. Dec. 345.

there can be no superior; and that where a man is employed to do the work with his own means and by his own servants, he has the power of selection and direction, and he, and not the person by whom the work is primarily done, is the superior." In referring to the doctrine as laid down in *Boswell v. Laird, supra,* the court say: "We are entirely satisfied with it and find no occasion to renew the discussion."

In *Blake v. Ferris,* 1 N. Y. 48,[10] the court say: "The rule of *respondeat superior,* as its terms imply, belongs to the relation of superior and subordinate, and is applicable to that relation wherever it exists, whether between principal and agent, or master and servant, and to the subjects to which that relation extends, and is coextensive with it, and ceases when the relation itself ceases to exist." In *Coyle v. Pierrepont,* 37 Hun, 379, a stevedore who was employed to unload a vessel at defendants' dock hired from the defendants a portable engine, with an engineer to run it, for the purpose of hoisting the cargo from the vessel and lowering it upon the wharf. An employee of the stevedore was injured by the negligence of the engineer, and the court below charged the jury that the defendants from whom the stevedore had hired the engine with the engineer to operate it were responsible for the negligence of such engineer. The appellate court held the instruction correct, and that the defendants were the masters of the engineer, and not the stevedore in whose employ he was at the time in unloading the vessel. In *Huff v. Ford,* 126 Mass. 24,[11] a wagon and horses and driver were hired by the city from the defendants, and the driver, while thus employed, struck one of the horses a violent blow, causing it to kick a loose shoe through a window. The decision reads: "The driver, employed and paid by the defendants, and who had entire management of the horses as to the manner of driving them, and whose duty it was to see that they were properly shod, was a servant of the defendants in so driving the horses; and for injuries to third persons by his negligence in these respects the defendants were responsible."

The cases cited by appellant do not hold that in a case of this

---

[10] 55 Am. Dec. 304.          [11] 30 Am. Rep. 645.

kind, where a person has not the control of the conduct of the other in the particular matter in question, he is liable for the negligence of such other.

The test in all these cases is, Who conducts and supervises the particular work, the doing of which, or the careless and negligent doing of which, causes the injury or damage? Here the city simply hired the use of the street-roller outfit from the defendant company—to wit, the roller, engine, and the engineer to manage the same—for so much a day. The city's agent—foreman of the street superintendent—only directed or supervised how and where the street should be rolled; he did not have the control or management of the engine; this was subject entirely to the judgment of the engineer, the servant of the owner, the defendant company, who had selected and employed him for that special purpose, paid him his wages and had the sole right to discharge him. We think the conclusion of law deduced by the court below from the facts found that the defendants are liable, and not the city of Oakland, is correct.

The judgment and order appealed from are affirmed.

Garoutte, J., Temple, J., and McFarland, J., concurred.

A rehearing was denied January 26, 1901. On petition for rehearing, the court rendered the following opinion:

THE COURT.—In the petition for rehearing, on the part of the defendants, it is suggested that, the attention of the court having been particularly directed to a consideration of the question as to who was the master or employer of the engineer—whether the city of Oakland or the California Improvement Company—the real question, to wit, whether the engineer was liable at all, has been overlooked. The liability of the engineer is a necessary postulate to the discussion or inquiry in reference to who was his employer or master. If the damages resulted without any negligence on the part of the engineer, it would be altogether immaterial who employed him, or who was responsible for his acts. The court, therefore, could not, and did not, overlook that question. But as the argument of the respective counsel was directed mostly to the controversy

as to who employed the engineer, or was responsible for his acts, necessarily the opinion is mostly devoted to the consideration of that question. The court below finds that the injury to the plaintiff was caused by the negligence of the defendant, the engineer, Conger, without any fault or negligence on the part of the plaintiff, and that at the time the relation of master and servant existed between the California Improvement Company and said defendant Conger. These findings are supported by the evidence.

Rehearing denied.