LOUIS DELORY *vs.* WARREN K. BLODGETT & another, trustees.

Suffolk.    January 18, 1904. — February 25, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Master and Servant. Negligence,* Employer's liability.

An expert workman in the employ of a machinery company, furnished by that company to the proprietors of a power plant to make repairs on their machinery under the direction and control of their superintendent, is while engaged in this work the servant of the proprietors and the fellow servant of an engineer in their employ, and cannot recover from the proprietors for personal injuries caused by the negligence of the engineer.

In an action against the proprietor of a power plant by a servant in his employ, for personal injuries alleged to have been caused by the negligence of the defendant in employing an unfit and incompetent engineer, it is no evidence of the defendant's negligence that the engineer had been known to drink intoxicating liquor, if there is no evidence that he ever was intoxicated and no evidence that the defendant knew that he drank intoxicating liquor to excess or otherwise.

TORT, by a millwright and carpenter in the employ of the American Tool and Machinery Company, for personal injuries alleged to have been caused by the negligence of the engineer of the proprietors of a power plant, maintained at 256 and 258 on Purchase Street in Boston, where the plaintiff at the time of his injuries was engaged in examining, adjusting and repairing certain machinery of the defendants, also alleging negligence of the defendants in employing a careless, incompetent and intemperate person as engineer.    Writ dated June 15, 1900.

At the trial in the Superior Court *Bond*, J. ruled that upon all the evidence the plaintiff could not recover, and ordered a verdict for the defendants.    The plaintiff alleged exceptions.

*W. A. Buie & W. J. Miller*, for the plaintiff.

*E. P. Carver*, (*F. H. Smith*, Jr. with him,) for the defendants.

KNOWLTON, C. J.    The plaintiff, while repairing machinery in the defendants' shop, was injured through the negligence of

one Whippen, the defendants' engineer, in starting the machinery. The plaintiff rests his claim for damages on two propositions: first, that he was not a servant of the defendants, and therefore that Whippen was not his fellow servant; and secondly, that if Whippen was his fellow servant, the defendants were negligent in employing him because he was an unfit person to be intrusted with the management of an engine.

The plaintiff's relations to the defendants appear from his testimony as follows: He said he was a millwright and carpenter in the general employment of the American Tool and Machine Company as a jobber; that jobbers were sent to do any kind of work, and were supposed to go wherever they were sent, and work until the work was done; that he and another man were directed by telephone to go to the defendants' place; that he had been there two or three times before; "that what he was sent to do first was to tighten up a pulley"; that afterwards, while he was in the engine room washing his hands, the defendants' superintendent Alden came down and said to him, "Hurry upstairs, there is something wrong with the belt"; that he went upstairs with the superintendent, and started to work and adjusted the tightener; that when he got through that, the superintendent said to him, "Come over and see if the wire is leading in the centre of the sheave"; that when he first came upstairs it was at the request of Alden, the superintendent; that when he went up to go to work on the tightener, Alden went with him; that after he got through with the tightener he asked Alden if there was anything else to do, and that Alden called his attention to the rope that ran over the sheave. The plaintiff's undisputed evidence shows that he was an expert workman, lent to the defendants by his general employer to make repairs upon their machinery. It appears that the American Tool and Machinery Company were accustomed to render bills to the defendants for labor and materials furnished, the labor being charged and paid for at a price per hour.

The law in regard to persons working in this way has often been considered by this court. In *Hasty* v. *Sears*, 157 Mass. 123, Mr. Justice Barker quoted as a true statement of the principle, this language from *Cockburn*, C. J. in *Rourke* v. *White Moss Colliery Co.* 2 C. P. D. 205, 209: "But when one person lends

his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." In *Coughlan* v. *Cambridge*, 166 Mass. 268, 277, Mr. Justice Morton says, " The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." In *Ward* v. *New England Fibre Co.* 154 Mass. 419, it was held that on the question whether work was done by the general master of the servant under a contract which gave him the right to control the business as it was going on, and to complete it without any right of interference or control by the person for whom it was being done, the fact that the payment was to be made at the usual prices for labor and materials, instead of by giving a round sum, was not conclusive. The mode of payment in such a case is usually very significant; but it is possible for a proprietor to contract for the performance of certain work on his property in a way which will give the contractor a legal right to furnish the whole work, and to direct all details, without interference by the proprietor, and to receive at the end a price to be determined by the current rates for labor and materials. In such a case, if the proprietor should prevent the performance of the contract by the contractor, he would be liable in damages; and so long as the work was going on, the workmen would be servants of the contractor, under his direction and control. This fact was also referred to in *Morgan* v. *Smith*, 159 Mass. 570; but in each of the cases the true principle was recognized, as stated by Mr. Justice Lathrop in the latter case, as follows : " There is no doubt that the general servant of one person may become the servant of another by submitting himself to the control and direction of the other. In such a case the servant becomes the fellow servant of the servants of the person under whose control he comes; and neither his general master nor his special master is liable if he is injured by the negligence of one of the other servants." It makes no difference whether the proprietor to whom a servant is lent actually exercises his right of control and direction as to the details of the work, or simply sets the servant to do what is necessary, trusting to his expert skill

for the result. This was decided in *Linnehan* v. *Rollins*, 137 Mass. 123. As was said in *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12, " The fact that they relied largely upon his skill and experience did not affect their absolute right to control him in everything he did upon their machinery."

The question in every case is whether the proprietor for whom the work is being done has given up his proprietorship of the particular business to an independent contractor, and has thus divested himself of the right of control, so that he has no longer a legal right to terminate the work or direct it. If he has done nothing to limit his rights in regard to the business which is being done for his benefit, but retains his proprietorship of it, each man who works in it is legally subject to his control while so engaged, and, in reference to the rights of third persons who are affected by the work, is his servant.

The rule applied when one furnishes for hire or lends to another a team of horses with a driver is simply an application of this principle. The circumstances are often such, that while the driver is the servant of the person to whom the team is furnished in reference to the question what he shall do or where he shall go, there is an implication that, as to the particulars of the management of the horses, he is the servant of his general employer, in whose interest and as whose representative he will manage and direct, within reasonable limits, such matters as pertain to the health and safety of the horses and the safety of the vehicle. In these particulars, for the preservation of his property, it will be presumed that the owner of the team retains in his driver a right of control. This is the ground of the decisions in *Huff* v. *Ford*, 126 Mass. 24. *Reagan* v. *Casey*, 160 Mass. 374, and *Driscoll* v. *Towle*, 181 Mass. 416. In the present case the plaintiff's testimony shows that he was not only legally subject to the direction and control of the defendants, but that the control was exercised by the defendants' superintendent by a series of directions. The plaintiff was a servant of the defendants, and a fellow servant of Whippen, the engineer.

There was no evidence that the defendants were negligent in employing an unfit or incompetent servant. There was testimony from two witnesses that at some times Whippen had been known to drink intoxicating liquor, but there was no evidence

that he was ever intoxicated, or that the defendants had knowledge that he drank intoxicating liquor, much less that he drank to excess. The testimony of other witnesses indicated that he was not in the habit of drinking liquor. The jury would not have been warranted in finding the defendants negligent in employing him.

*Exceptions overruled.*