FINK et al. v. BROWN. (No. 512.)*

(Court of Civil Appeals of Texas. El Paso. Feb. 3, 1916. On Rehearing, Feb. 24, 1916.)

1. MASTER AND SERVANT ☞88 — LENDING SERVANT—DIRECTION AND CONTROL.

Where a servant is sent by his master to do work for a third person, he is, for the time being, the servant of him who exercises direction and control over the servant in the prosecution of such work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. ☞ 88.]

2. MASTER AND SERVANT ☞284 — LENDING SERVANT—DIRECTION AND CONTROL—QUESTION FOR JURY.

In an action by the servant of a machine company to recover against defendants, to whose ice plant he was sent by his employer for the purpose of repairing a boiler, the question whether in the performance of such task plaintiff was subject to the direction and control of defendants or of his own employer, as determining where the status of master and servant lay in the particular instance, held for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. ☞284.]

3. MASTER AND SERVANT ☞276 — LENDING SERVANT — INJURY — DIRECTION AND CONTROL—EVIDENCE.

In an action by the servant of a machine company to recover for personal injury sustained while repairing a boiler at defendants' ice plant, where he had been sent by his employer to make such repairs, the issue being

whether plaintiff was, for the time being, defendants' servant so as to bar his recovery on the ground that his injury was caused by the negligence of a fellow servant, evidence held sufficient to support the finding of the jury that in prosecuting such work plaintiff remained subject to the direction and control of his employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. ☞276.]

4. MASTER AND SERVANT ☞297—CONTRIBUTORY NEGLIGENCE—FINDINGS.

Where in such action the jury found that plaintiff failed to exercise care for his own safety in doing the work about the boiler, and in the following finding found that such failure did not proximately cause or contribute to his injury, the latter finding was not unwarranted on the ground that, if he was guilty of negligence, as found by the preceding finding, such negligence was necessarily a proximate cause, since there was nothing to indicate what act the jury had in mind when it made such general finding that plaintiff was guilty of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. ☞297.]

5. MASTER AND SERVANT ☞297 — GENERAL FINDING OF CONTRIBUTORY NEGLIGENCE—CONTRADICTING ADVERSE FINDINGS ON SPECIFIC ACTS PLEADED.

Where defendants pleaded specific acts of contributory negligence in such action, and the jury found that plaintiff was not guilty thereof, the general finding that plaintiff did not exercise care for his own safety in and about the work was immaterial, since, though plaintiff may have been negligent in some respect not specified, a defense could not be predicated upon an act of contributory negligence not pleaded.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. ☞297.]

6. PARTNERSHIP ☞30—LESSOR AND LESSEE OF ICE PLANT—INJURY TO WORKMAN—SHARING PROFITS—LIABILITY.

Where defendant lessors had leased an ice plant to defendant operators under an agreement that all net profits in excess of a certain sum should be shared between the parties, such lessors were partners of the lessees, and liable as such to a workman injured through lessees' negligence while repairing a boiler in the plant.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 38–48; Dec. Dig. ☞30.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by H. E. Brown against W. W. Fink and others to recover for personal injuries. Judgment for plaintiff, and defendants appeal. Affirmed.

Wallace & Gardner, Peyton F. Edwards, J. G. McGrady, and R. E. Thomason, all of El Paso, for appellants. F. G. Morris and Chas. Owen, both of El Paso, for appellee.

HIGGINS, J. This is a suit by Brown against Fink & Smith, a copartnership, and the El Paso Ice & Refrigerator Company, a corporation, to recover damages arising from personal injury. Recovery against said corporation was sought upon the theory that it was a partner of Fink & Smith.

---

On March 4, 1910, the defendants entered into a written contract between themselves, whereby said corporation leased to Fink & Smith an ice manufactory for a period of three years at an annual rental of $10,000 to be paid by the lessees, who also agreed to pay the corporate franchise tax and one-half the state and county taxes. The contract contained this further stipulation, viz.:

"In consideration that the lessor will pay one-half of the said taxes, it is agreed that, should the lessee make a net profit of more than ten thousand ($10,000.00) dollars annually during any one or more years of this lease, the surplus above ten thousand ($10,000.00) dollars shall be divided equally between the lessor and the lessee. And this is to be done whether the profit comes from the operation of the plant or from closing it down and not operating it."

At the time of plaintiff's injury the ice plant was being operated by Fink & Smith under said contract. The defendants Fink & Smith requested the Darbyshire-Harvie Iron & Machine Company to repair a boiler on the premises of defendants by removing damaged flues therefrom and placing therein new flues. Plaintiff was a boiler maker in the employment of the Darbyshire-Harvie Company, and was directed by them to make such repairs on a boiler to be shown him by Fink & Smith. Plaintiff went upon said premises for the purpose of making such repairs, and said defendants furnished him a helper in his work. Plaintiff entered the boiler and commenced the work of removing the damaged flues and replacing same with new flues. The boiler in which plaintiff was working was connected by a drainpipe with another boiler which was in use and termed a "live" boiler. Plaintiff had opened the drain cock of the boiler in which he was working and left same open. While he was so situated, an employé of Fink & Smith discharged hot water and steam into the boiler, whereby plaintiff received the injury of which he complains. This hot water and steam was discharged from the "live" boiler through the drainpipe connecting the boilers. The allegations of plaintiff's petition present a state of facts showing that he was doing the work upon the boiler as an employé of the Darbyshire-Harvie Company, and that said company was engaged in making the repairs upon said boiler as an independent contractor.

The defendants answered by pleas of assumed risk and contributory negligence. The allegations of the petition that plaintiff was the servant of the Darbyshire-Harvie Company, who was repairing the boiler as an independent contractor, were denied, and facts were averred showing that plaintiff became an employé of defendants and that his injuries were due to the negligence of a fellow servant in discharging the steam and hot water into the boiler. The El Paso Ice & Refrigerator Company also defended upon the ground that it was not a partner of Fink & Smith. Other issues raised by the defendants' pleadings are not pertinent to a consideration of the questions here presented.

The cause was tried before a jury and submitted upon special issues. In response to the issues submitted facts were found as follows: Saylor, the engineer of Fink & Smith, applied to Darbyshire-Harvie Iron & Machine Company to send a boiler maker to the ice plant to perform the specific job of putting flues in a boiler. The company sent Brown to put said flues in defendant's boiler at the ice plant. At the time of his injury Brown was engaged in the work of putting in flues in said boiler, or in work necessarily incident thereto. In the performance of the work Brown was subject to the supervision and direction of the Darbyshire-Harvie Company. An employé of defendant, Fink & Smith, in blowing in steam in the boiler where plaintiff was at work, under all the facts and circumstances, failed to exercise ordinary care for Brown's safety, and his injuries were proximately caused by said failure to exercise ordinary care. While Brown was engaged in removing and replacing the flues in the boiler for the El Paso Ice & Refrigerator Company, he was acting in furtherance of the business of the Darbyshire-Harvie Company. Fink & Smith's employés in charge of the plant and boilers did not exercise control over the manner and way in which Brown did his work in and about removing and replacing the flues in the boiler in question. Plaintiff, Brown, on the morning prior to his accident opened the drain cock and left the same open. Brown knew, or by the exercise of ordinary care incident to the work in which he was engaged could have known, that the drainpipe connecting into the boiler where he was working and through which the steam and hot water flowed that caused his injury was connected with the other live boiler. He was not guilty of negligence in going to work in the boiler where he received his injuries without first closing the drainpipe or seeing that same was closed. He was not guilty of negligence in entering the boiler and going to work on the morning of the date of his injury in not closing or seeing that the blow-off pipe in the boiler was closed. Brown was damaged in the sum of $6,000 by his injuries. Other findings by the jury will be hereinafter stated.

Upon the findings, judgment was rendered in favor of Brown against all defendants.

Appellee seeks to hold the defendants liable for his injuries under the rules applicable to one invited on the premises of another to do something for the owner of such premises. Appellants assert that the evidence discloses he was their servant and was injured by the negligence of a fellow servant, if negligence there was. It was not denied by appellee that he was the fellow servant of the fireman who discharged the steam into the boiler where he was working, if he, Brown, was a servant of defendants. But he denies that he

was their servant and says he occupied the position of a servant of an independent contractor, namely, Darbyshire-Harvie Iron & Machine Company.

[1] Appellants direct our attention to a number of cases in this and other states where the rule has been announced that, where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be considered the servant of the one to whom he is lent, although he remains the general servant of the person who lent him; and, if the servant receives an injury in such employment from the negligence of a servant of the person to whom he is lent, he cannot recover therefor; the test to determine the status of the employé being whether in the particular service he is engaged to perform he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is hired or lent. Judson et al. v. Tucker, 156 S. W. 225; Edmundson v. Coca-Cola Co., 150 S. W. 273; Walker v. Elec. Ry. Co., 118 S. W. 554; Wallace v. Southern, etc., 91 Tex. 18, 40 S. W. 399; Delory v. Blodgett, 185 Mass. 126, 69 N. E. 1078, 64 L. R. A. 114, 102 Am. St. Rep. 328; Brady v. Railway Co., 114 Fed. 100, 52 C. C. A. 48, 57 L. R. A. 712; 26 Cyc. 1285.

[2] But the jury in this case has found that in the performance of his task Brown was subject to the supervision and direction of the Darbyshire-Harvie Company; and Fink & Smith's employés in charge of the plant and boilers did not exercise control over the manner and way in which Brown did his work in and about removing and replacing the flues in the boiler in question. The question whether the relation of master and servant exists is one of fact for the jury, or such tribunal as may be, in the given instance, intrusted with the function of deciding such issue, where the evidence as to the material circumstances is conflicting. So, if there be evidence to support the findings just noted, Brown, in view of the test laid down in the authorities to which we have referred, could not be considered the servant of defendants.

[3] Nold, an official of the Darbyshire-Harvie Company, in substance, testified that:

He had a notation on his books of an order given by defendants for a boiler maker to go over to their place and work. His company was not to furnish any material at all, and did not furnish any flues or material. Defendants were to have the material on the ground. The man was to put in the flues. He was to go to whoever was in charge of the boiler to get instructions. The man in charge of the boiler would show him the place to work and the flues they wanted taken out. "We had no contract to do the work. We sent them a man to do the job. Loaning them a man or hiring them a man does not exactly express it. We furnished no helper. They were to furnish a helper and the material. We charged them 90 cents an hour. We had no understanding beforehand. We were to get what was customary for the man we sent over. They could have laid him off—sent him back to our shop any time they wanted to. They had no authority to discharge him. They could discontinue the job any time they saw fit, whether the work was completed or not completed. If he put the work in one way, and they did not like it, they could have stopped him. He was to do the job the way they wanted it done. He was under our foreman, but our foreman was not there. Our foreman may have gone over there part of the time, but was not there all of the time. I don't know that the foreman was there at all. We would allow him to work there until he finished the work according to the way defendants wanted it done. We would expect him to do the work any way they wanted it done. If it came to a question of whether he should receive orders from one or the other, our foreman was the man to whom he would look for authority. When Brown was over there, he was doing this particular piece of work according to the direction of the men who were paying us to have it done that way. I do not think they gave him any directions about doing the work. If it came to a question of authority to direct how he should do it, he would have to come to our foreman. If he was told to put a particular flue in there, he would, theoretically, have to come back to our foreman to find out whether he would do it or not. If he was directed by the foreman of the ice factory to put in the flue, he would not have to come and find out of our foreman whether he should do that or not, because he was sent to do that work. If the question arose as to whether he was doing it properly or not, he would have to take orders from our foreman. If we sent a man over there to work, he is, theoretically, under the orders of our foreman and not theirs."

Saylor, the chief engineer of defendants, testified substantially as follows:

That he was chief engineer of defendants and in charge of the engines and operation of the steam engines and the work upon them; that Brown was working by the hour under his direction; that he had authority to take Brown off the boiler and send him back to the Darbyshire-Harvie Company at any time. "We were paying the machine company 90 cents an hour for his services. He was loaned to defendants for that work. When I called the machine company to send us a boiler maker, I did not tell them what I wanted of him."

Plaintiff, Brown, testified, in substance, to the following effect:

"I went to the plant of defendants by order of Mr. Black, the boiler maker foreman for Darbyshire-Harvie Company. He directed me to put in flues over there in a boiler. After receiving that instruction, I went to defendant's plant and reported at the office that I was a boiler maker and sent over there to do the work of putting in flues. They told me to go out and see Mr. Saylor, the chief engineer. I went out and saw Saylor, who said: 'Go and see Kindred, the assistant engineer; he will show you what flues he wants put in, and also show you the flues.' Mr. Kindred showed me the flues, and I proceeded to cut out the old flues and put in the new ones. No one was there directing me how to do the work. Engineers are not skilled or competent to direct that work or work such as I was doing. Mr. Saylor was not attempting to direct me. There was no communication at all between me and Mr. Saylor in regard to what I was doing after I got there to work. There was none between me and Mr. Kindred as to how I was doing the work, or no one else on the premises. The main steam pipe in top was leaking. When I first went there, I reported to some officials of the ice company. I first started to cut out the flues. The assistant engineer, Kindred, told me where to go at that time. It was

my instructions and I went there to take out flues and put in some flues. I was all day cutting them out. The Mexican helped me the first day. The second day I was putting in flues. I got the flues from the ice company. I took them out of the stock there. Mr. Kindred told me where to find them. He showed me the ones to take out. I did not do that under his instruction. He told me where they were, and I went and put them in. He says: 'Here are the flues.' I went and got them. Then I took them and the Mexican and myself put them in. I was controlling my Mexican helper. I don't know that they could have taken me away any time they got ready. If they had come there and told me to get out, I suppose I would have gotten out and gone back and reported to Darbyshire-Harvie Company. The first work was cutting out the flues; then the next work was putting in the flues. I did not know which flues I was to work on or cut out until I got there and the assistant engineer pointed them out. When he pointed them out I went to work on them. I only cut out those he showed me and said they wanted cut out. When I got those cut out, he went and got the flues furnished by them and put them in."

We think the testimony of Nold and plaintiff sufficient to support the finding of the jury upon the issue of direction and control of Brown in the manner of doing the work. On this point it is important to understand what is meant by control and direction. It does not mean merely pointing out the object to be worked upon or the material to be used. It means supervision as to the proper doing of the work in a skillful and workmanlike manner. In Walker v. Railway Co., 103 Tex. 259, 126 S. W. 262, Judge Gaines said:

"That the work was to be done and how to do it is, in our opinion, a very different thing from directing the work as it was done."

In Gayle v. Car & Foundry Co., 177 Mo. 427, 75 S. W. 987, it was held that the retention of a general supervision over the place where work is done and of the right to inspect various pieces of work to see if they conform to contract does not render the relations between the parties that of master and servant, rather than of independent contractors, so as to make the fellow-servant rule applicable.

A Canadian case is thus noted and summarized by Mr. Labatt in his work on Master & Servant (2d Ed.) vol. 1, p. 208:

"A verdict finding that the servant of a plumber who was sent to assist the employés of a gas company in making connections between their main and the pipes leading to adjacent buildings was not their fellow servant will not be set aside, where it appears that he was paid for his work by the plumber, and was in no wise subject to the directions of the company, except in so far as their agents pointed out to him the place where the connections were to be made. St. John Gaslight Co. v. Hatfield (1894) 23 Can. S. C. 164, affirming (1893) 32 N. B. 100."

In Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922, Chief Justice Holmes lays down the general principle that the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does make him that person's servant, and thus discusses its applicability to the circumstances before the court:

183 S.W.—4

"The contract between the defendant and the electric light company was not stated in terms, but it fairly could have been found to have been an ordinary contract by the defendant to do his regular business by his servants in the common way. In all probability it was nothing more. Of course, in such cases the party who employs the contractor indicates the work to be done, and in that sense controls the servant, as he would control the contractor if he were present. But the person who receives such orders is not subject to the general orders of the party who gives them. He does his own business in his own way, and the orders which he receives simply point out to him the work which he or his master has undertaken to do. There is not that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to make the employer liable under the fiction that the act of the employé is his act."

In volume 1, § 25, Labatt, Master & Servant (2d Ed.), it is said:

"It is well settled that, where one person is performing work in which another is beneficially interested, the latter may exercise over the former a certain measure of control for a definite and restricted purpose, without incurring the responsibilities, or acquiring the immunities, of a master, with respect to the person controlled."

In Stewart v. California Imp. Co., 131 Cal. 125, 63 Pac. 177, 52 L. R. A. 205, the court said:

"The company was to furnish the roller and engineer and fuel for so much a day, and the superintendent of streets was to control the movements of the roller by directing as to what portion of the street should be rolled, and when sufficiently rolled. Neither the superintendent of streets nor his foreman presumed to direct the engineer in reference to the management of the engine in regard to the pressure of the steam, or how or when it should be applied or shut off, or in reference to the escaping of steam through the safety valve. No one not an engineer, or having some knowledge or experience in reference to the management of an engine, would assume to direct the engineer in reference to such matters. As he was the one to know, and not the superintendent of streets or his foreman, whether there was danger in the escaping of steam through the safety valve, the duty devolved upon him to give people warning in case there was such danger; and for injury resulting from negligence in this respect he, and the owner of the engine, who put him in charge of the same, would be responsible."

This last quotation is peculiarly applicable to the case at bar. Here, although Saylor, a mere engineer, claimed skill sufficient to direct a boiler maker in the details of his work, though no specific direction is testified to, yet Brown testified that an engineer had no training by reason of his vocation in boiler making, and that Saylor had no such knowledge as would have enabled him to supervise him in the details of his work, and that Saylor did not, in fact, assume to do so. He merely pointed out the place to work and the material to be used. The jury was thus waranted in deducing from the testimony of Nold and Brown that Brown was not subject to the direction and control of Saylor as to the manner in which the work of cutting out and putting in the new flues was to be done; that such authority as Saylor may have possessed did not go to this extent.

In this connection it may be noted the jury also found that Saylor, the engineer of Fink & Smith, applied to the Darbyshire-Harvie Company to send a boiler maker to the ice plant to perform the specific job of putting flues in a boiler; that Brown was sent to put said flues in the boiler, and that, while he was engaged in removing and replacing the flues in the boiler, he was acting in the furtherance of the business of said Darbyshire-Harvie Company. In Walker v. Railway Co., 118 S. W. 554, and in the same case in the Supreme Court, 103 Tex. 259, 126 S. W. 262, where the question arose as to who was the plaintiff's master, stress was laid upon whether the work undertaken by the employé was in furtherance of his master's regular business, or was done aside from and for the benefit of the person for whom he was sent to work. Whether the employé was sent to do a particular job or to do any work the party he was lent to might put him to do was also regarded as of importance by the majority of the Supreme Court. But it is not necessary for us to rest our decision upon these last-noted findings, as, in our judgment, the findings upon the issue of direction and control are authorized and supported by the evidence. This being the case, it is unnecessary to pass upon the sufficiency of the evidence to support the finding that Brown, while engaged in his task, was acting in furtherance of the business of Darbyshire-Harvie Company.

[4, 5] The seventh finding was that Brown, in the performance of his work about and in the boiler, failed to exercise ordinary care for his own safety; the eighth finding was that such failure did not proximately cause or contribute to his injury. It is assigned as error that the eighth finding is unwarranted, because, if he was guilty of negligence, as was established by the seventh finding, such negligence was undoubtedly a proximate cause. In support of this position we are referred to Dowlen v. Texas Power Co., 174 S. W. 675; Culpepper v. Railway Co., 90 Tex. 627, 40 S. W. 386; Railway Co. v. Rowland, 90 Tex. 365, 38 S. W. 756. But here there is nothing to indicate what act the jury had in mind when it found the plaintiff was negligent of his own safety in the performance of his work. So it cannot be said that such negligence was undoubtedly a proximate cause of his injury, as was held in the cited cases. Furthermore, their inapplicability is apparent when we consider the issues raised by the pleadings and findings thereon. The specific act of contributory negligence pleaded was the act of plaintiff in opening and leaving open the drain cock or blow-off pipe connecting the live boiler and the one in which he was working. In response to issue 5A, it was found that Brown was not guilty of negligence in so doing; in response to issue 8B, that such negligence, if any, on his part was not a proximate cause of his injury; in response to 7B, that he was not negligent in

going to work in the boiler without first closing the drainpipe or seeing that same was closed; in response to 8A, that he was not negligent in entering the boiler and going to work without closing or seeing that the blow-off pipe in the boiler was closed. These latter findings are abundantly supported by the evidence. Adverse findings, amply supported by the evidence, being made with respect to the specific acts of contributory negligence pleaded, the general finding that Brown was negligent in the performance of his work is of no consequence. A defense could not be predicated upon an act of contributory negligence not pleaded. Brown may have been negligent in some such respect, and the jury may have so believed, but facts not pleaded cannot form the basis of a judgment. Ginners, etc., v. Wiley & House, 147 S. W. 629, and cases there cited.

[6] The only remaining question in the case relates to the issue of liability upon the part of the El Paso Ice & Refrigerator Company. Its liability, if any, rests upon the theory of a partnership between the parties, created by virtue of the clause in the lease contract whereby said company acquired an interest in any net profits made by Fink & Smith in excess of $10,000 annually. In a most able argument counsel for the company urge the view that this clause is insufficient to create a partnership relation when the parties had no intention of so doing, did not so consider themselves, and there was no holding out as such. There is high authority for their position, but we understand the rule in Texas to be established that as to creditors the partnership status is deduced as a matter of law from a contract between the parties to share in the profits of an enterprise, as profits, and not merely as compensation for his time or labor. Cothran v. Marmaduke & Brown, 60 Tex. 370; Kelley, etc., v. Masterson, 100 Tex. 38, 93 S. W. 427; Fouke v. Brengle, 51 S. W. 519; Dilley v. Abright, 19 Tex. Civ. App. 487, 48 S. W. 548. The case of Buzard v. Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7, is not an exception to this rule.

If there is to be a departure from this rule, it is the province of the Supreme Court, and not of this court, to announce the same.

Affirmed.

## On Rehearing.

In their motion for rehearing appellants criticize that portion of the opinion wherein it is stated:

"The specific act of contributory negligence pleaded was the act of plaintiff in opening and leaving open the drain cock or blow-off pipe connecting the live boiler and the one in which he was working."

It is insisted there is a general allegation of contributory negligence, and that there are specific allegations with respect to other acts of contributory negligence. We are referred to the third, fourth, sixth, and seventh paragraphs of the answer of Fink & Smith. The third and fourth paragraphs

are not affirmative defenses, but specific denials of the allegations of the petition made in accordance with chapter 127, General Laws of Thirty-Third Legislature, and cannot properly be considered as presenting the affirmative defense of contributory negligence under general allegations. But, if so, such general allegations are controlled and limited by the specific allegations in subsequent portions of the answer.

Paragraph 6 purports to be a plea of assumed risk. Paragraph 7 presents the plea of contributory negligence, and we think it was correctly summarized in the quoted portion of the opinion. It may be that portions of paragraph 6 properly present issues of contributory negligence, rather than assumed risk, though, professedly, it relates to the latter. However this may be, the answers of the jury to the various issues submitted preclude the idea that defendants are entitled to judgment upon any issue of contributory negligence specifically pleaded. And, if the issues submitted to the jury do not cover all issues of negligence specifically pleaded, it will be presumed that the same were resolved against appellants by the court.

The motion for rehearing is overruled.