THE NORWEGIAN NEWS COMPANY, Appellant, *v.* ISIDORE SIMKOVITCH, Respondent.

(Supreme Court, Appellate Term, Second Department, May, 1920.)

**Master and servant — negligence — automobiles — when hirer of automobile not liable for negligence of chauffeur — contracts — appeal.**

> Where upon the trial of an action to recover damages to plaintiff's automobile, the trial justice, though he found as facts that the driver of defendant's automobile truck at the time of its collision with plaintiff's car was careless and that his carelessness was the sole proximate cause of the accident, with resulting damages to plaintiff in a certain sum, directed a verdict for the defendant solely on the ground that his driver, being temporarily loaned or hired out to a third person whose

Appellate Term, Second Department, May, 1920.    [Vol. 112.

servant he was for the time being, defendant was not liable. The record was barren of any evidence that the third person had any control over defendant's truck aside from the fact that he was on it with the driver, and that the goods in transit thereon were owned by a firm with whom the third person had contractual relations. *Held,* that as it did not satisfactorily appear that the defendant surrendered full dominion and control of both his truck and his driver to the third person, the judgment will be reversed and judgment rendered in favor of plaintiff for the sum found by the trial court, with costs.

APPEAL from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, fifth district, entered upon a verdict in favor of the defendant.

Stanley Garten, for appellant.

Bertrand L. Pettigrew (Walter L. Glenney, of counsel), for respondent.

KELBY, J. The plaintiff was the owner of an automobile, and claims that injury was done to it by reason of defendant's automobile truck carelessly colliding with plaintiff's car. The court below found that one Mocas, who was the driver of defendant's car at the time of the collision, was careless, and that his carelessness was the sole proximate cause of the collision, with resulting damages to the plaintiff in the sum of $203. The trial justice, however, directed a verdict in favor of the defendant solely on the ground that Mocas, the defendant's chauffeur, was temporarily loaned or hired out to a man named Bernstein, and that Mocas was the servant of Bernstein for the time being, and that, therefore, the defendant was not liable in law for the careless acts of Mocas.

It appeared that Bernstein had an "express horse and wagon" with which he used to take goods from the firm of Browning, King & Co. to different tailors

and contractors, and bring the goods back. It further appears that Browning, King & Co. had some contract with the government for making uniforms for sailors, and Bernstein undertook to deliver these uniforms from time to time from said firm's place of business in Manhattan to a building owned and controlled by the navy department in Brooklyn.

On the 30th day of September, 1918, Bernstein stopped at the defendant's place of business and told him to send a machine, with a chauffeur, to Browning, King & Co. in the borough of Manhattan, at half past two in the afternoon. The chauffeur and the truck reported a little bit late, the uniforms were loaded on the truck, and they proceeded on the way to the navy building, and, while so carting the uniforms, Mocas, the chauffeur, carelessly drove into the plaintiff's car. Bernstein agreed to pay for the use of the truck and chauffeur two dollars and fifty cents an hour. Bernstein was on the truck with Mocas when the accident happened. Bernstein's testimony is uncontradicted in the record that he never gave any instructions to Mocas or ever interfered with him in the operation of his car, nor did he even direct him as to what course to pursue in going from Browning, King & Co. to the navy building. The defendant himself admits that Bernstein told him that he wanted to take this particular load from Browning, King & Co. to the navy building, and that he hired the truck to him for that purpose.

The court below based its decision on the cases of *Hartell* v. *Simonson*, 218 N. Y. 345; *Carr* v. *Burke*, 183 App. Div. 361, and *Schmedes* v. *Deffaa*, 214 N. Y. 675, and stated that the case at bar was clearly distinguishable from that of *McNamara* v. *Leipzig*, 227 id. 291, stating that, in the latter case, "The element of an independent contract is plain."

Appellate Term, Second Department, May, 1920.   [Vol. 112.

The vexed question as to when and under what circumstances the servant of one master is transferred to the service of another is the subject of many decisions which are in apparent conflict one with the other. It seems plain that the owner of a car, who gratuitously lends his car with his chauffeur to another person, with the consent of the chauffeur, express or implied, is thereby absolved from all acts of the chauffeur while he is in the service of the new master. The moment, however, a bailment of the car and services of the chauffeur are made for a money consideration, the same moment difficulty ensues in determining in and about whose business the chauffeur is then acting. Clearly, when he is earning money for his original master and owner of the car, he is about his master's business; the master's liability for his servant's acts should not cease unless it is clearly apparent that entire dominion and control of the car and the servant are no longer present in the owner. As has been repeatedly stated, the servant must, in the course of the master's employment, be doing the work of the master under the will, direction and control of the master throughout all the details of the work.

Measured by this standard, can it be said that the driver in this case was the servant of Bernstein at the time of the accident? Bernstein himself says that he gave him no directions, even as to route to be pursued, and no directions as to the manner of driving. If it be true that the driver was the servant of Bernstein, then Bernstein would be liable to pay to the defendant any injuries to defendant's automobile caused by the careless act of Mocas in the general employ of the defendant. It seems clear that this was never within the contemplation of the parties when they made the contract to call at a specified time to get goods and to deliver the same, and to be paid for the service at the

rate of two dollars and fifty cents per hour. In the case of *Shepard* v. *Jacobs,* 204 Mass. 110, cited with approval in *McNamara* v. *Leipzig,* 227 N. Y. 291, it was said at page 112: " * * * The driver does not become the servant of the hirer, but remains subject to the control of his general employer and, therefore, the hirer is not liable for his negligence in driving. * * *" And at page 113: " The health and safety of the horses and the protection of the whole team by careful management, are of so much importance to the owner that, in the absence of an express contract, he will not be presumed to have given up their management to the hirer when he has sent his own servant for the special purpose of retaining this management. * * * The management of an automobile properly can be trusted only to a skilled expert. The law will not permit such a vehicle to be run in the streets except by a licensed chauffeur after approved competency. The danger of great loss of property by the owner as well as of injury to the chauffeur, his servant, is such as to make it of the highest importance that care should be exercised in his interest, and that the control and management of the machine should not be given up to the hirer. The reasons for applying this rule in a case like the present are fully as strong as when a carriage and horses are let with a driver."

This record is entirely barren of any control of the defendant's automobile by Bernstein, aside from Bernstein being on the car with the driver and that the goods in transit were owned by Browning, King & Co., with whom Bernstein had contractual relations. Nor does the fact that Bernstein had a " one-horse express " and that, for some reason, this was inadequate to carry the goods in question, change the principle as to the control of the driver.

In the case of *Delory* v. *Blodgett,* 185 Mass. 126, 129,

it was said: "As to the particulars of the management of the horses, he (the driver) is the servant of his general employer, in whose interest and as whose representative he will manage and direct, within reasonable limits, such matters as pertain to the health and safety of the horses and the safety of the vehicle. In these particulars, for the preservation of his property, it will be presumed that the owner of the team retains in his driver a right of control." See, also, *Jones* v. *Scullard,* 2 Q. B. 565, 572, 574; *McNamara* v. *Leipzig, supra.*

With these rules of law in mind it does not satisfactorily appear that the defendant, the owner of the automobile truck, surrendered full dominion and control of both truck and Mocas, his servant, to Bernstein. It follows, therefore, that the defendant was liable for the careless acts of Mocas and, as the court below found the damages to be the sum of $203, the judgment of the court below is reversed, and judgment rendered in favor of the plaintiff against the defendant for the sum of $203, with appropriate costs in the court below and costs of this appeal.

CLARK and CROPSEY, JJ., concur.

Judgment reversed, with costs.