## SOUTHERN UNDERWRITERS v. LLOYDS AMERICA et al.

### No. 3536.

Court of Civil Appeals of Texas. Beaumont.

Nov. 3, 1939.

Rehearing Denied Nov. 15, 1939.

Battaile & Burr, of Houston, for plaintiff in error.

Sewell, Taylor, Morris & Garwood, of Houston, Mueller & Mueller, of Seguin, and T. F. Green, Jr., and Pitts & Liles, all of Conroe, for defendants in error.

COMBS, Justice.

On July 8, 1936, while engaged in pulling pipe and reworking an oil well in the Conroe oil field, Ovid M. Thompson was killed as the result of the collapsing of the derrick being used in the reworking operation. The only matter at issue in this law

suit is which of two compensation insurance companies is liable. The oil well being reworked belonged to Feltex Oil Corporation, for which appellee Lloyds America was the compensation insurance carrier. The well was being reworked by C. E. Starrett Oil Producing Company, for which appellant, Southern Underwriters, was the compensation insurance carrier. That Thompson was killed in the course of his employment; that his widow and minor child, appellees herein, are entitled to compensation insurance payments at the maximum rate all appear without dispute. But both insurance companies denied liability, each contending that Thompson was the employee of the other employer. And upon that contention hangs the tale of more than three years delay (up to now) in payment of the compensation insurance which is unquestionably due by one or the other of · the insurance carriers to the widow and minor child of ·the deceased. So far as necessary to be stated, the pertinent facts bearing upon the issue involved are: The Feltex Oil Corporation, which we will hereafter refer to as Feltex Company, owned and operated a number of producing oil wells in the Conroe oil field. C. E. Starrett Oil Producing Company, which we will refer to as the Starrett Company, was engaged in the business of reworking oil wells. The Feltex Company contracted with the Starrett Company to rework the well in question. The contract was oral and there is some question as to whether the contract was to the effect that the provisions of a prior written contract between the Starrett Company and the Motex Oil Company would govern. But we do not think that question material. In any case the controlling features of the agreement were established without dispute to be as stated by the witness, C. E. Starrett, as follows:

"Q. Tell the jury .what your agreement was, what you agreed with Feltex to do? A. I had an agreement with Mr. Feldman and Mr. Adelson (officials of Feltex) in the presence of Mr. Condra (field superintendent for Feltex). He asked me if I had the equipment necessary to rework a well and I told him that I did, and he asked me my terms and I told him it was customary to charge $6.25 an hour for the equipment and one man, which was the driller or operator, and that if it was inconvenient for him to furnish the balance of the labor, we would furnish it and bill him for it at cost, the men's wages plus .the insurance or whatever the carrying charges amount to, and he was to move the material to Conroe and return it to our yard in Refugio."

Deceased, Thompson, was a driller and an expert in oil well reworking operations. He had been employed by the Starrett Company in that capacity for about two years prior to the accident. Pursuant to the contract, Starrett Company furnished its well reworking equipment, which was of a type not possessed by Feltex Company, and its expert operator for the agreed price of $6.25 per hour. Starrett Company also employed and paid the laborers or "rough-necks" who worked with Thompson, and in the final settlement Feltex paid to Starrett Company the amount which it had paid to those workers. The proof shows that the reworking of an oil well is a delicate operation, requiring special knowledge and skill, there being constant danger of a blowout and serious damage to the well. Feltex Company retained an expert consultant, R. G. Jackson, to supervise reworking operations and he and the Feltex superintendent, Condry, maintained a close watch and supervision over the reworking operations being carried on by Thompson. C. E. Starrett testified that when he sent Thompson to the Feltex job he instructed him to do the work as directed by Mr. Jackson and Mr. Condry, and in general to "keep them satisfied." We think it clear· that Jackson, and in his absence Condry, had the ultimate responsibility and authority of determining what operations should be undertaken, that is, it was for them to say whether the casing or screen should be pulled, whether the well should be plugged and redrilled, and if so to what depth, etc. But we think it equally clear and without dispute that neither Jackson, Condry nor any other representative of Feltex Company had control over ·Thompson as to means and methods of accomplishing the work; that is to say as to how the machinery should be operated in performing the various operations. C. E. Starrett testified that the Starrett Company's machinery was quite expensive and that he would not have entrusted the operation of it to any other person on that job except Thompson, and in that he was corroborated by Jackson, who testified:

"Q. State whether or not in the performance of the work on this job, before Mr. Thompson was killed, you did anything or did not do anything other than to tell

him what was to be done? A. That is correct.

"Q. What are the facts with reference to who exercised any control, if any, over Mr. Thompson after it had been determined a certain operation would be done with reference to the manner and means of doing that particular operation? A. Mr. Thompson was not only the driller, but was Mr. Starrett's foreman, and had control not only over the shift he worked but also over the other driller.

"Q. The question is: Who exercised control over the way the thing was done after it was determined it should be done? A. Mr. Thompson."

The evidence shows without dispute that Thompson was a regular employee of the Starrett Company and his wages were paid by the Starrett Company for his work on the job in question, and that after his death Starrett Company employed another driller to take his place, one Nelson, to complete the job.

Another matter which we think of controlling effect was the contract between the Feltex Company and the Starrett Company with reference to compensation insurance. It appears without dispute that the Starrett Company was to carry compensation insurance on all of the men, including Thompson, which it used on the reworking operations and that Feltex Company would refund or pay to the Starrett Company the sums paid for insurance premiums. The Starrett Company reported the wages of all the said employees, including Thompson, to its insurance carrier, the appellant, Southern Underwriters, and paid to Southern Underwriters the insurance premiums, which have been retained by appellant. In the final settlement the Feltex Company paid to the Starrett Company the sums which had been paid for insurance premiums. The Feltex Company did not report the wages of said employees to its insurance carrier, appellee Lloyds America, nor did it pay to Lloyds America any insurance premiums for coverage of said workmen. These facts appear from the testimony of C. E. Starrett, president of the Starrett Company, B. A. Wales, secretary-treasurer of that company, and Floyd Karsten, secretary-treasurer of the Feltex Company, and are not disputed.

At the conclusion of the evidence the trial court instructed a verdict in favor of the widow and minor child and against appellant, Southern Underwriters, insur-

ance carrier for the Starrett Company, and in favor of appellee Lloyds America, insurance carrier for Feltex Company.

### Opinion.

■ Appellant contends only that it raised an issue of fact for submission to the jury that Thompson, the deceased, was the employee of Feltex Company and not the employee of Starrett Company. The assignment is overruled. Under all of the evidence, as we view it, Thompson was the employee of the Starrett Company. He was an expert in the line of work being carried on by his employer, the Starrett Company. His was the sole and final responsibility for the operation of the highly specialized and expensive machinery which Starrett Company used in its oil well reworking operations. And although the Feltex production expert, Jackson, had final authority with reference to what operations should be undertaken on the job, yet the manner of operating the machinery and accomplishing the ends sought rested solely with Thompson. He was therefore the employee of the Starrett Company. This holding is in accord with the holding of the Texarkana Court of Civil Appeals in the recent case of Dennis v. Texas Employers' Insurance Ass'n, 116 S.W.2d 492, a case which is strikingly similar on the facts to the case before us. On this point see also Tanner v. Drake, Tex.Civ.App., 47 S.W.2d 452; Id., Supreme Court, 124 Tex. 395, 78 S.W.2d 162, 163; Stewart v. Cal. Imp. Co., 131 Cal. 125, 63 P. 177, 52 L.R.A. 205.

■ We think the instructed verdict was correct for another reason. It appears without dispute that the agreement between the Starrett Company and the Feltex Company was that Starrett would carry the compensation insurance on all of the men used by Starrett Company in the reworking operations in question. The Starrett Company did carry the compensation insurance with the appellant on all of those men. Appellant's policy, therefore, covered all of the employees engaged in that work, the very work in which Thompson received his death injury. It is clear that the Feltex Company either did not regard Thompson and his fellow workers as its employees, or if it so regarded them it considered them in a different category from its regular employees, and so contracted with Starrett Company to carry the compensation insurance. Such being the case

154

we think the question of whose employee Thompson was is not of controlling importance. If he was the employee of Feltex Company he was covered by appellant's policy because in that event the insurance was carried by Starrett Company for the benefit of Feltex Company. Lindsey v. T. & N. O. R. R. Co., Tex.Civ.App., 87 S.W. 2d 864. On the other hand, if Thompson be regarded as the employee of Starrett Company, he was certainly covered by the insurance which Starrett Company carried for him and the other employees; a proposition which appellant does not question. In short, it is our view that appellant's policy covered Thompson because its policy insured him on the very job and in the very work in which he received his death injury, irrespective of whether he was the employee of Starrett or Feltex. Appellant collected, and has retained, the insurance premiums. We think it is justly indebted to Thompson's widow and minor child for the insurance to which they are entitled. It ought to pay them.

Judgment affirmed.