[L. A. No. 11719. In Bank.—June 24, 1932.]

LILA McCOMAS, Respondent, v. AL. G. BARNES SHOWS COMPANY (a Corporation) et al., Defendants; ALLIANCE INVESTMENT COMPANY (a Corporation), Appellant.

Arthur S. Guerin, A. Feldman, Smith & Breslin and James Smith for Appellant.

William C. Ring and Faucett & Ring for Respondent.

CURTIS, J.—Action to recover damages for personal injuries sustained by the plaintiff by reason of the negligence of the defendant, Alliance Investment Company. The plaintiff was employed by the Wm. Fox Studio as an actress to ride an elephant which was used in connection with the filming of a certain moving picture which the Wm. Fox Studio was then engaged in making. The defendant, the Alliance Investment Company, was the owner of the elephant and its equipment, and on the day in question the Wm. Fox

Studio hired the elephant, its equipment, and an attendant, or trainer of the elephant, from the Alliance Investment Company, for the use of which in the making of said picture the Wm. Fox Studio paid the Alliance Investment Company the sum of $115. This sum was to and did include the wages of said trainer. At about 5 o'clock P. M. on the day agreed upon, the elephant, with its equipment and its trainer, was brought in a truck to the place where the picture was being made. The trainer then prepared the elephant for the plaintiff to ride thereon by placing a chair, called a howdah, on the back of the elephant and by strapping girths under and around the body of the elephant. After the howdah was placed and "harnessed", a robe made to fit over it was placed upon the elephant's back and another was draped over the howdah. The elephant was then stationed where it could be conveniently led out before the camera at the proper time. Early in the evening the plaintiff was assisted on the elephant by the trainer and instructed by him how to sit and ride thereon. The part of the picture in which the elephant and its rider were to be shown depicted a scene within an amusement zone. Among the attractions which were here to be represented were various amusement contrivances, such as roller-coasters, airplane devices, and other contrivances, usually found in this type of amusement places. During the rehearsal of this scene these different contrivances were set in motion with the result that their combined effect produced loud and tumultuous noises. These noises had a disquieting effect upon the elephant. During one of the rehearsals which took place about an hour and one-half after midnight, the elephant escaped from his trainer and ran away. It was only after an extended pursuit that the trainer succeeded in recapturing the animal and returning it to its appointed place. Upon reclaiming the elephant the trainer administered to it a severe punishment by hitting and beating it over the head and ears with a "bull hook", an instrument used by the trainer to control the elephant. This punishment may not have added to the elephant's peace of mind. After the elephant had been recaptured and returned to its place, the trainer made no examination of the equipment which held the howdah in place upon the elephant's back. Nor did anyone else then, or at any time before the accident, make such an examination to ascertain whether the equip-

ment was in proper condition or the howdah securely strapped upon the elephant. About twenty minutes thereafter, or as some of the witnesses fix the time, at about 2 o'clock in the morning, the accident happened. During this twenty minutes the elephant stood in his appointed place with the plaintiff sitting in the howdah on its back. The elephant was swaying its body backward and forward, or, as one witness described its movements, "the elephant was weaving back and forth". While the elephant was going through this movement, the howdah for some reason slipped from its back and fell to the ground carrying the plaintiff with it. The howdah, which weighed 150 pounds, fell upon the plaintiff as she struck the ground, inflicting upon her serious injury. There is evidence that the trainer left the elephant a few minutes after he had recaptured it and returned it to its proper place, and was not present when the howdah slipped from the elephant's back, nor for some ten minutes prior thereto.

Plaintiff instituted this action against the Al. G. Barnes Shows Company, the Wm. Fox Studio, a corporation, and a number of fictitious persons, both natural and corporate. The action was dismissed against the Wm. Fox Studio, upon its being shown that plaintiff was in the employ of that company at the time she sustained the injury, and therefore that her remedy against said company was for compensation and not for damages. The Al. G. Barnes Shows Company appeared by answer and denied that it was the owner of the elephant or the employer of Nance, the trainer. The Alliance Investment Company, sued as John Doe Company, appeared and by answer admitted the ownership of the elephant and that it had hired said animal and trainer to the Wm. Fox Studio. The case was tried by the court with a jury. At the close of plaintiff's case the court granted a nonsuit as to the defendant Al. G. Barnes Shows Company. The jury rendered its verdict in favor of the plaintiff and against the defendant, the Alliance Investment Company, and judgment thereon was entered accordingly. From this judgment said defendant has appealed.

It is not contended that the judgment of $15,000 is excessive or that the evidence is not sufficient to support the verdict. The contention is made, however, that the trial

court grievously erred in giving one instruction to the jury and in refusing to give another proposed by the appellant.

The instruction given by the court to which the appellant takes exception is in part as follows: (1) "It is admitted that Mr. Nance, the trainer of the elephant, on the occasion in controversy here, was the agent, employee and servant of defendant Alliance Investment Co., a corporation, and his negligence, if any, with respect to a duty of the defendant is imputed to the said defendant Alliance Investment Company, a corporation. . . . "

"(2) If you determine from the preponderance of the evidence that the plaintiff was injured as a result of the howdah slipping or falling off the elephant and you determine that at the time it happened the elephant and its equipment were under the control of the defendant, then the plaintiff may recover without proving exactly what caused the howdah to slip or fall. That is, you may or may not infer, from the facts given that the defendant was negligent, and may so find, without further evidence in plaintiff's behalf." The parts of this instruction omitted are merely repetitions of the statements contained in the above quotations from said instruction.

The proposed instruction which the court refused, and which refusal appellant claims resulted in prejudicial injury to it, in so far as it is necessary for our purposes here, is as follows: "You are instructed that it is the law, that one who is the general servant or employee of another may be loaned or hired by the master for some special service, so as to become as to that special service the servant of such third party; and where a general servant or employee is so loaned or hired to another, and as regards the particular service, for which he is so loaned or hired, is subject wholly to the direction and control of the other, the latter, and not the general employer, is the master, so far as the particular or special service is concerned, and is liable for injuries caused by the negligent and wrongful acts of the servant, while engaged in the duties pertaining to such service.

"Therefore, if you find from the evidence that the trainer of the elephant, to-wit: J. O. Nance, was employed by the defendant, Alliance Investment Company, in a general capacity as trainer of its elephants and was hired out by that company, together with the elephant in question, to the

Wm. Fox Studio, both for the purpose of taking part in the motion picture called 'Sunrise' then being made by Wm. Fox Studio and that said J. O. Nance was subject wholly to the direction and control of said Wm. Fox Studio while performing the duties for which he was hired by defendant to said Wm. Fox Studio, then said Wm. Fox Studio is liable for any injury caused to said plaintiff by the negligent and wrongful act or acts of said J. O. Nance while engaged in the duties pertaining to his services for said Wm. Fox Studio.''

Appellant now contends that by the first paragraph of the above-quoted instruction given by the court, the jury were told by the court that it was admitted that the negligence of Nance, the trainer, was imputed to the Alliance Investment Company, the appellant, and that by refusing to give the proposed instruction, the trial court denied the appellant the right to have the question as to whether Nance, the trainer, at the time of the accident, was the servant of the appellant or was the servant of the Wm. Fox Studio considered by the jury. We have grouped these two contentions under one head for the reason that they are closely related to each other, and because we think that they can better be treated together rather than separately. We think the court was possibly in error in stating to the jury that it was admitted that the negligence of Nance, the trainer, was imputed to the appellant. As we view the pleadings, the evidence, and the admission of counsel made during the trial of the case, we are not entirely satisfied that the admissions of the appellant go to that extent. It is clear that appellant admitted its ownership of the elephant, its employment of Nance as trainer, and the hiring of the elephant and its trainer to the Wm. Fox Studio for the purposes of filming the picture which the Wm. Fox Studio was then engaged in making. This admission was made principally for the purpose of showing the true relationship between itself and the Al. G. Barnes Shows Company. As we have seen, the Al. G. Barnes Shows Company was made a party to this action and plaintiff alleged in her complaint that said company was the owner of the elephant and the employer of Nance, and was, therefore, responsible for her injuries. The Al. G. Barnes Shows Company in its answer denied these allegations of the complaint, and the answer of

appellant also contained denials of the same allegations, with further allegations that appellant was such owner and employer. In the course of the trial these issues were involved and were the subject of more or less discussion between counsel. As stated before, we find nothing in the record that thoroughly satisfied us that the appellant made any admission that it was liable for the acts of Nance at the time of the accident. It did admit, both in its pleadings and elsewhere, that it, and not the Al. G. Barnes Shows Company, was the owner of the elephant and the employer of Nance, but it further contended that after hiring the elephant and its trainer to the Wm. Fox Studio they were wholly under the direction and control of the latter company while performing the duties for which they were hired, and that the Wm. Fox Studio was solely liable for the injury sustained by plaintiff. It was error, therefore, for the court to instruct the jury as it did regarding such admission. The practical effect of the first paragraph of this instruction was to withdraw from the consideration of the jury the question as to Nance's employment at the time of the accident, and whether he was then in the employ of his general employer, the appellant, or his special employer, the Wm. Fox Studio. By its refusal to give the instruction quoted above and proposed by appellant, the trial court denied the appellant the right to submit this same question to the jury. If this question was, under the evidence in this case, a proper one for the consideration of the jury the action of the court in giving the first-mentioned instruction, and also in refusing to instruct the jury as requested by appellant in the proposed instruction quoted above, was not only erroneous but it was prejudicial to the substantial rights of the appellant.

Whether the question was a proper one for the consideration of the jury depends entirely upon the evidence bearing upon the question of Nance's employment at the time of the accident. If the uncontradicted evidence shows as a matter of law that Nance was then in the employ of his general employer, the appellant, and that his special employer, the Wm. Fox Studio, had no direction or control over him in respect to the particular services out of which the accident arose, then the question as to liability for his negligence was not one for the jury. Appellant relies in support of its contention that the trial court erred in re-

fusing its proposed instruction upon the case of *Peters* v. *United Studios, Inc.*, 98 Cal. App. 373 [277 Pac. 156]. It was there held under the facts in that case 'that it was error for the court to instruct the jury that as a matter of law the defendant, Kenneth Daum, the driver of a tractor that struck and injured the plaintiff in said action, was the agent and employee of the United Studios, the owner of said tractor and the general employer of Daum, and which company had hired said tractor and its driver to the Christie Company for the use of the latter company in filming a picture then being made by it. But we think that case can be readily distinguished from the present action. In that case the plaintiff was injured by the tractor driven by Daum during the very time when the picture was being taken. Daum was told just when and where to drive his tractor by the director of the Christie Company, his special employer. He followed explicitly these directions, which were to drive the tractor through a doorway and then across the stage. He drove the tractor in the manner directed four or five times and on the last time the tractor struck an obstruction and veered into the plaintiff, inflicting upon him the injuries for which he sought damages against his general employer, the United Studios. The court very properly held under the facts in that case that the general employer, the United Studios, was not as a matter of law liable for the negligence of Daum, but that the question of its negligence was one of fact to be determined by the jury. The facts we think in the present case are radically different. Here the plaintiff was injured by the falling of the howdah from the elephant's back while she was waiting for the elephant to be called into action at the proper time in the filming of the picture. The howdah slipped and fell from the elephant by reason of some defect in the equipment which secured it in place, or by reason of some defective use of this equipment in harnessing or fastening the howdah to the back of the elephant. The evidence does not show which of these two conditions caused the howdah to slip and fall from the elephant's back,, but it is apparent from the evidence that either one or the other of them was the direct cause of plaintiff's fall. The negligence in this case, which was the proximate cause of plaintiff's injury, was the failure to securely and firmly fasten and fix the howdah to the

elephant's back. This duty was solely that of the trainer, Nance. He was employed by appellant on account of his peculiar skill and knowledge in the handling of elephants. He had had before this occasion five years' experience as a trainer of elephants, and had been in the employ of the appellant in that capacity during a large part of that time. The Wm. Fox Studio gave the trainer no directions as to how he should place the howdah upon the elephant's back, nor did any representative of that company assume to know anything about the handling of elephants, or how they should be "harnessed" for the purpose of carrying passengers. Not only were no directions given to the trainer by the Wm. Fox Studio as to the mode or manner he should equip the elephant for carrying passengers, but we think it is evident from the facts in the case that no right or authority had been given the Wm. Fox Studio by the general employer to direct or control the trainer as to his duties in that respect. The trainer, therefore, in the performance of these duties was the servant or employee of the general employer, the appellant herein. This conclusion we think finds full support in the decisions of this court.

In the case of *Stewart* v. *California Improvement Co.*, 131 Cal. 125, 131 [52 L. R. A. 205, 63 Pac. 177, 179, 724], the city of Oakland had hired from the California Improvement Company a steam roller together with an engineer to operate the same. The steam roller was used by the city in rolling and leveling its streets. While the engineer was in charge of said steam roller, steam escaped from its engine through the safety valve in front of plaintiff's horse. The horse became frightened, "wheeled short around and tilted over plaintiff's cart, and the plaintiff, without any fault on his part, was thrown out and dashed violently upon the ground". In an action to recover for the injuries so sustained, the question arose as to whether the engineer at the time of the accident was in the employ of the city or of the defendant, California Improvement Company. In deciding that question this court held as follows: "The test in all these cases is, Who conducts and supervises the particular work, the doing of which, or the careless and negligent doing of which, causes the injury or damage? Here the city simply hired the use of the street-roller outfit from the defendant company—to-wit, the roller, engine, and the

engineer to manage the same—for so much a day. The city's agent—foreman of the street superintendent—only directed or supervised how and where the street should be rolled; he did not have the control or management of the engine; this was subject entirely to the judgment of the engineer, the servant of the owner, the defendant company, who had selected and employed him for that special purpose, paid him his wages and had the sole right to discharge him. We think the conclusion of law deduced by the court below from the facts found that the defendants are liable, and not the city of Oakland, is correct.''

In the later case of *Billig* v. *Southern Pac. Co.,* 189 Cal. 477 [209 Pac. 241, 244], the plaintiff's decedent was a passenger on the train of the defendant Southern Pacific Company and was killed in a collision between said train and an autotruck, owned by a defendant named Harris and driven by his employee, Pratt, at the time of the collision. Harris had rented his autotruck and the driver, Pratt, together with a helper to one Geiger for the purpose of transporting from Los Angeles to San Pedro harbor a quantity of gasoline which Geiger had purchased from the Gilmore Petroleum Company, and at the time of the collision said truck with the driver and other employee was engaged in transporting gasoline under said contract of hiring. The court instructed the jury that Pratt, the driver of the autotruck on the occasion in controversy, was the agent of the defendant Harris and any negligence on his part was imputed to the said Harris. This court, in affirming the judgment against Harris, sustained the action of the trial court in the giving of said instruction. In so holding the court said (p. 485) : ''While the evidence in the instant case shows that Geiger, under the implied terms of the claimed contract of hiring, possessed and exercised authority to control the conduct of Pratt in the work of loading and unloading, nevertheless, so the evidence shows, Geiger never assumed the right to direct and control Pratt in his operation of the truck while in transit, and there is no evidence showing, or tending to show, with respect to the operation of the truck, while in transit, that the defendant relinquished unto Geiger the right to control Pratt. The fact is undisputed that Pratt was the general paid employee of the defendant Harris, and while it was shown in evidence

that Geiger was empowered by Harris to send to the barn inefficient helpers who were engaged in loading and unloading, still the only inference to be deduced from the undisputed evidence is that the right to hire and discharge the men rented to Geiger by Harris rested finally in Harris, and that Harris alone discharged them. The evidence does not show that Pratt for any cause might have been discharged by Geiger and replaced by a driver of Geiger's own selection. Retaining in himself, as Harris did, the right to hire and discharge Pratt, and there being no evidence showing, or tending to show, that Harris, either expressly or impliedly, relinquished control of Pratt in the operation of the truck, there was no possible basis upon which the jury could have found that Pratt was, as a matter of fact, the servant of Geiger, and, therefore, the trial court was justified in charging the jury, as a matter of law, that under the established facts of the case, Pratt was agent of Harris at the time of the collision.'' (Citing authorities.) In a previous portion of said opinion the court discussed the case of *Stewart* v. *California Improvement Co., supra,* and pointed out its applicability to the facts in the Billig case. In this connection, the court on page 484 said: ''Whatever the rule and its variations may be in other jurisdictions, it is the settled rule of law in this state, applicable to cases of the character under consideration here, that a general employer is not freed from responsibility for the negligent acts of an employee merely because the employee has been hired out by the employer to a third person to be used by the latter in the performance of his work. (*Stewart* v. *California Improvement Co.,* 131 Cal. 125 [52 L. R. A. 205, 63 Pac. 177, 724].) The case last cited is in fact and principle strongly analogous to the case at bar. In that case it appeared that the defendant company had hired out, to a municipality, a steam roller, together with an engineer, one of the company's general employees, to be used in the rolling and leveling of a city street, which work was being done under the direction of the city's superintendent of streets. The plaintiff in the case suffered injuries caused by the negligent operation of the engine by the defendant company's engineer, and said company was held liable for the resultant damages upon the theory that the facts showed, as a matter of law, that

the relation of master and servant existed between the defendant company and its engineer and that no such relation existed between the municipality and the engineer. This was held to be so primarily because of the undisputed facts that the city had merely hired from the defendant company, at a stipulated *per diem*, the services of the engineer and the use of the instrumentality employed in the performance of the municipality's work and that its agent had authority only to direct and supervise the work in hand and did not have the authority to control the engineer in his operation and management of the engine.

We think the principles of law declared in these decisions are controlling in the present action, and that the language quoted above is strikingly applicable to the facts in the instant case. The undisputed facts here show that while the Wm. Fox Studio had hired from the Alliance Investment Company the elephant and its trainer at a stipulated *per diem* for the purpose of producing certain portions of the picture then being made, and that while the Wm. Fox Studio had authority to direct the trainer as to the part the elephant should take in the making of said picture and as to the time and manner of its performance, yet the Wm. Fox Studio had no authority to control the trainer in his preparation of the elephant for said performance, and particularly as to the adjustment of the howdah and other equipment upon the elephant in order that it might be safe for plaintiff to ride therein. The proper performance of these duties required peculiar and special skill and knowledge which the trainer Nance alone possessed. He was employed for that purpose by his general employer, and the latter never surrendered to the special employer any right or authority to perform these duties, or to direct or control Nance in the performance of them. Nance, therefore, in that respect and to that extent, remained the employee of the Alliance Investment Company, and if negligent this negligence was imputed to his general employer, the Alliance Investment Company. It might also be recalled that Nance's wages were paid by his general employer and that the special employer had no authority to discharge him. While these additional facts are not controlling in all cases, when the other facts mentioned and discussed herein are considered in connection with them, and that all are sup-

ported by the uncontradicted evidence in the case, we think the conclusion is irresistible that the general employer was as a matter of law responsible for the acts of Nance, and accordingly it was liable for his negligence.

■ Appellant makes the further objection to the second paragraph of the instruction given by the court and first quoted above. Appellant contends that the court, in effect, thereby instructed the jury that the doctrine or rule of *res ipsa loquitur* applied to the facts in this case. Granting that the appellant is right in this contention, we are not prepared to say that it was error for the court to apply said doctrine to the facts before it. The instrumentality, the elephant and its equipment, was in charge of appellant through its employee, the trainer, and it was the trainer's duty to securely adjust the equipment and keep it so in order that respondent might ride upon the elephant in safety. The equipment in some way became loose, causing the howdah to slip and fall to the ground carrying the respondent with it to her serious injury. The howdah would not in the ordinary course of things have slipped and fallen had the trainer used proper care in strapping it on the elephant's back. It was not incumbent upon the respondent to either allege or prove the particular acts of the trainer which constituted negligence on his part. It is true that respondent pleaded negligence both generally and specially. It is settled, we think, beyond question in this state that the doctrine of *res ipsa loquitur* applies when negligence is pleaded both generally and specially. (*Roberts* v. *Sierra Ry. Co.*, 14 Cal. App. 180 [111 Pac. 519, 527] ; *Bourguignon* v. *Peninsular Ry. Co.*, 40 Cal. App. 689 [181 Pac. 669] ; *Burke* v. *Dillingham*, 84 Cal. App. 736 [258 Pac. 627] ; *Seney* v. *Pickwick Stages*, 82 Cal. App. 226 [255 Pac. 279].)

■ From the foregoing it is apparent that appellant was not prejudiced by the giving of the instruction complained of, nor was it error for the court to refuse to give the instruction proposed by appellant. It follows that no sufficient showing has been made by appellant for a reversal of the judgment.

Respondent has moved the court to dismiss the appeal on the ground that appellant's opening brief does not meet the requirements of the rules of this court. While said brief

is subject to many of the criticisms made of it by respondent, we do not feel that these defects are sufficient to compel a dismissal of the appeal. Respondent's motion, therefore, is hereby denied.

The judgment is affirmed.

Langdon, J., Preston, J., Seawell, J., Tyler, J., *pro tem.*, and Waste, C. J., concurred.