[Civ. No. 19213.   Second Dist., Div. Two.   Mar. 11, 1953.]

SADIE GAVEL, Appellant, v. GERTRUDE ANNA JAMISON et al., Respondents.

Thomas W. LeSage and Harry M. Bowman for Appellant.

Parker, Stanbury, Reese & McGee and Harry D. Parker, C. F. Jorz and John G. Zelezny for Respondents.

McCOMB, J.—From a judgment in favor of defendants predicated upon the granting of their motion for nonsuit in an action to recover damages for wrongful death, plaintiff appeals.

Viewing the evidence, as we must on the granting of a motion for nonsuit, in the light most favorable to plaintiff, we accept plaintiff's statement of the facts which is as follows:

"The plaintiff, Sadie Gavel, is the surviving widow and sole heir of the deceased Arthur Gavel who was killed on June 30, 1947, while engaged in the course of his employment as carpenter foreman for the Wm. C. Crowell Co. Plaintiff had married the deceased in 1938.

"The Wm. C. Crowell Co. . . . had the prime contract with the California Hardware Co. for the construction of a multiple story warehouse located at 121 Rose Street, Los Angeles, California.

"Crowell entered into a written subcontract with Jamison for the doing of certain work stated in the subcontract which fell generally into the classifications of excavation, concrete cutting, back fill and removal of debris.

"Hesse was the owner of the crane which fell when an excavation collapsed, killing the deceased Arthur Gavel. Harmon Willingham was the 'operator' of the crane and Randall Griffin was the 'oiler' or 'swamper' of the crane. Willingham and Griffin were on the payroll of Hesse. . . .

"At the time of the accident all of the excavations had been completed except one . . . or possibly two. The crane was being maneuvered near the excavation in which it fell in order to get it into position to complete the last excavation and then to back off the job into the street. Because of the numerous excavations that had been completed and the other construction work in process, the crane was being 'spotted' at the only possible location preliminary to completing the final excavation.

"The excavation in which the crane fell had been freshly dug, having been completed only 2 hours before the accident. The crane, weighing 25 tons with a forty-foot boom and ten wheels with truck tires, was moving back and forth within less than 2 feet of the edge of the excavation.

"The soil was sandy loam 'pretty' damp and excavations for some of the footings were required to go a greater depth than specified because the soil did not meet 'load bearing requirements.'

". . . When the banks of the excavation collapsed, the body of the crane slipped into the excavation and the 40-foot boom fell in a northerly direction, striking the deceased with the very end of the boom. He was apparently killed instantly."

This is the only question presented so far as defendants are concerned: *Is there any evidence from which the jury might have inferred that either one or both of them had any right to control the crane which caused the accident or the premises where the accident occurred at the time it happened?*

This question must be answered in the negative. The record is devoid of any evidence that either or both defendants were doing the excavating work; had engaged Mr. Hesse, who was the owner and operator of the crane which fell into the excavation; or were in any other way responsible for the operation of the crane at the time of the accident. Nor is there any evidence which directly proves or from which an inference could be drawn that either defendant had or exercised any control, or had the right to exercise control, over the operations of the crane, or over the manner in which the premises were maintained.

There is no evidence that defendant Montez was in any way connected with the operation of the crane. The only evidence that defendant Jamison had any connection with the crane was that possibly she had requested it to be sent to the site of operations, and had paid for its rental as well as the salary of the two employees of its owner out of money which she received herself under her subcontract.

The case is on all fours with that of *Billig* v. *Southern Pac. Co.,* 189 Cal. 477 [209 P. 241], which promulgated these applicable rules:

(1) A general employer (in this case, Mr. Hesse) is not freed from responsibility for the negligent acts of an employee merely because the employee, together with an instrument, has been hired out by the employer to a third person to be used by the latter in the performance of his work, and the negligence of the employee must be held to be that of the owner and not that of the hirer of the instrumentality. (*Billig* v. *Southern Pac. Co., supra,* 477, 484 [4] *ff.*)

(2) The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the very time and in respect to the very thing out of which the injury arose. (*Billig* v. *Southern Pac. Co., supra,* 477, 483 [3] *ff.*)

In view of the fact that the record is devoid of any testimony that would connect either defendant or give either one of them the right of control over the persons in charge of

the instrumentality which caused the accident, the motion for a nonsuit as to such defendants was properly granted.

Affirmed.

Fox, J., concurred.

Moore, P. J., concurred in the judgment.

A petition for a rehearing was denied March 26, 1953, and appellant's petition for a hearing by the Supreme Court was denied May 7, 1953.