[Civ. No. 27695.　Second Dist., Div. Two.　June 22, 1964.]

HORN & BARKER, INC., Plaintiff and Appellant, v. MAC-CO CORPORATION, Defendant and Respondent.

98

Bolton, Groff & Dunne, John S. Bolton and Henry E. Kappler for Plaintiff and Appellant.

Schell & Delamer and Fred B. Belanger for Defendant and Respondent.

HERNDON, Acting P. J.—Plaintiff appeals from the judgment entered following the sustaining of defendant's demurrer without leave to amend. Plaintiff's complaint attempts to state a cause of action based upon a theory of implied indemnity. A second count for money had and received is based upon the same transaction as that alleged in

the first cause of action. The demurrer to the latter count was sustained in conformity with the familiar rule when it was determined that the actual and ultimate facts alleged by plaintiff in its first count did not constitute a cause of action. (*Orloff* v. *Metropolitan Trust Co.,* 17 Cal.2d 484, 489 [110 P.2d 396].)

██ "The right to implied indemnity, while relatively recent in the law of California, is now well established. [Citations.]" (*Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal. App.2d 367, 375-376 [25 Cal.Rptr. 301], wherein numerous cited decisions are extensively analyzed both as to their facts and their legal theories.)

 In support of its claim to indemnification, plaintiff's complaint alleges that on September 23, 1958, defendant corporation was employed as a contractor on a certain construction project; that one Ira Carnahan was an employee of defendant and performed services on the construction project; that plaintiff owned and operated a business engaged in the leasing and rental of construction equipment and machinery; that on said date "plaintiff, for a consideration, leased and rented to defendant Macco a certain back-hoe machine and delivered it to the project, for the use of defendant Macco . . . [and] also furnished an operator for said machine, one Robert Kostka ... who accompanied said machine to the project."

The complaint further alleges that Carnahan subsequently brought an action against plaintiff to recover damages resulting from injuries sustained by him arising from the operation of the leased machine. This action resulted in judgment against plaintiff in the sum of $103,000 which was subsequently satisfied by the payment to Carnahan of $67,500. In addition, plaintiff expended the sum of $2,920.68 for attorney fees and legal costs in connection with the defense of this action. The complaint specifically alleges:

"The liability of plaintiff to Carnahan for his injury and damage, *as determined by the judgment in said action,* resulted from no actual fault of, or misfeasance by, plaintiff, but arose only *because of a responsibility imposed on plaintiff by law; as the alleged general employer of Kostka; for the negligent acts and omissions of Kostka during the time Kostka was operating said machine,* as hereinbefore described." (Italics added.)

In an attempt to establish its right to shift its liability for the conduct of its negligent employee to defendant, plain-

tiff's complaint alleges as follows: "Concurrently with the delivery of said machine to the project, and the arrival thereon of Kostka, defendant Macco assumed full and exclusive control and use of said machine and assumed full and exclusive supervision and direction of Kostka, in his operation of said machine. Thereafter, defendant Macco utilized said machine, and supervised and directed Kostka in his operation of said machine, in the performance of certain excavation work then and there being performed by defendant Macco as contractor on the project.

"On or about September 23, 1958, while performing said excavation work, and while using said machine and supervising and directing Kostka in his operation of said machine, defendant Macco so recklessly, negligently and carelessly used said machine, and so recklessly, negligently and carelessly supervised and directed Kostka in his operation of said machine, as to cause bodily injury and damage to said Carnahan.

"During said time when said bodily injury and damage was caused to Carnahan, as hereinbefore described, plaintiff exercised no control, direction or supervision whatsoever over the activities of Kostka, and/or over the operation and use of said machine, and in fact had no right and no power to do so."

It is apparent that by the above quoted allegations, and by the more extensive allegations made in the proposed amended complaint (which was attached to plaintiff's notice of motion to reconsider the order sustaining the demurrer without leave to amend) plaintiff is seeking to relitigate the determinative issue which necessarily was decided adversely to it in the prior action described in its present complaint. That is, if the quoted "conclusions" or "ultimate facts" thus set forth in plaintiff's complaint, or proposed amended complaint, were true, plaintiff would not have been liable to Carnahan in the original action since Kostka would have been in the special employ of defendant.

The rules governing this subject have been declared in the numerous decisions of the California courts which are cited and summarized in 32 California Jurisprudence 2d, Master and Servant, section 114, pages 546 to 550. No useful purpose would be served by their repetition here.

When it is reduced to its essential elements, the question as to which of two potential masters or employers shall be held responsible for the active negligence of a servant or

employee is not a question which is answered by the law governing in the field of indemnity. Long prior to the development of presently effective theories of implied indemnity, the rules of agency determining the classifications of "general" and "special" employment had been achieving essentially the same results without following the circuitous route to the determination of liability inherent in modern implied indemnity cases. If, in an appropriate factual situation, the responsibility for the acts of a workman and the liability resulting from application of the doctrine of *respondeat superior* justly should be imposed upon the special employer it is placed there immediately. That is to say, the special employer is held liable and the general employer not liable.

 Of course, this result would be inevitable in any event, because, as noted in *Alisal Sanitary Dist.* v. *Kennedy*, 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379]: " 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; ... It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. ...' " (Italics supplied by the court.) (See also *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 378-379; *American Can Co.* v. *City & County of San Francisco*, 202 Cal.App.2d 520, 525 [21 Cal.Rptr. 33].)

 In the instance of a dispute between a general and special employer as to which should be held liable for the negligence of a workman, there is only one *character* or *kind* of wrong in issue, i.e., the imputed liability resulting from the application of the doctrine of *respondeat superior*. Therefore, the problem of primary and secondary liability does not arise.

We need not here consider the effect of the doctrine of res judicata as applied in rulings upon demurrers (*Flores* v.

*Arroyo,* 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263] ; cf. also *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604-606 [25 Cal.Rptr. 559, 375 P.2d 439] ; *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810-811 [122 P.2d 892]). This is true because plaintiff's pleading itself affirmatively established that previously it had been judicially determined that it, as "general employer," was bound to bear the responsibility "for the negligent acts and omissions of [the challenged employee] Kostka during the time Kostka was operating [its] machine." To the extent that it seeks by its present pleading to relitigate this issue and to shift the identical imputed liability to the defendant, as special employer, it must necessarily fail.

From the present record we cannot, and need not, determine whether or not plaintiff brought the present defendant into the prior action wherein it is alleged that its liability for the acts of its employee was judicially determined. Even apart from the resolution of the general versus special employer question, plaintiff could have joined the defendant therein either to establish that defendant was a joint tortfeasor *(Vegetable Oil Products Co.* v. *Superior Court,* 213 Cal.App.2d 252, 256 [28 Cal.Rptr. 555] ; *City of Sacramento* v. *Superior Court,* 205 Cal.App.2d 398, 403 [23 Cal.Rptr. 43]), or to determine whether or not a cause of action for indemnity existed between them *(Vegetable Oil Products Co.* v. *Superior Court, supra,* at p. 257 ; *Roylance* v. *Doelger,* 57 Cal.2d 255, 258-262 [19 Cal.Rptr. 7, 368 P.2d 535]), without awaiting a determination of its own liability or the amount of the damages resulting thereunder.

However, we have already disposed of appellant's mistaken contention that the "right of implied indemnity" may be used as a vehicle for the subsequent transfer of the liability imputed to the general employer under the doctrine of *respondeat superior* over to the special employer in a second action. In its reply brief, appellant actually concedes this point, but then proceeds to argue that, although it is responsible for the active negligence of its employee, Kostka, nevertheless, since this liability results from the application of the *respondeat superior* doctrine, it is of a lesser or secondary or more passive character than the negligence of respondent.[1] Thus, it is asserted :

---

[1]It may be noted, of course, that this contention ignores the fact that the negligence, if any, of the respondent, a corporation, also is derived from the acts of its employees that are imputed to it.

"... The respondent argues that since the appellant was held liable as the general employer of the operator on the theory of *respondeat superior* that it is barred from showing that Macco was the primary tortfeasor because the issue of general employment vs. special employment has been decided in the suit by Carnahan against it.

*"However, appellant is not alleging that Macco is primarily liable because it directed the operator Kostka, where to go and what to do, but that Macco in breach of its duty to appellant* used the machine and operator in an unsafe and dangerous manner under dangerous and hazardous conditions created in violation of applicable Safety Orders and *created the hazard of injury by directing one of their workmen, the said Carnahan, to work at the bottom of the excavation under such conditions while the machine was in operation.* This was not an issue in . . . [Carnahan's prior action against appellant]." (Italics added.)

It subsequently reframes the same contention as follows:

"In the instant case, the facts alleged show the creation of dangerous and hazardous conditions and plan of operation by Macco and the use of appellant's operated machine under these dangerous and hazardous conditions in a manner for which it was not intended by using it to excavate beyond its depth for safe operation; and creating extreme hazard to its own employee by directing him to work at the bottom of the hole while the machine was in operation. This is a situation in which respondent Macco was the one primarily responsible and appellant by reason of the doctrine of *respondeat superior* bore the brunt of the consequences. Thus as a matter of equitable adjustment the liability should be shifted to respondent Macco."

It may be conceded readily that the possibility that plaintiff and defendant might have been joint tortfeasors (whose negligence concurrently produced the accident resulting in injuries to Carnahan) was not precluded by the judgment in Carnahan's prior action against the plaintiff. But such possibility would be equally fatal to plaintiff's right to seek indemnification under the facts here alleged. Once it was established that plaintiff was responsible for the active negligence of its employee Kostka which was at least *one* of the proximate causes of the accident, the right to indemnity was foreclosed. This is true, even though the negligence imputed to respondent by reason of the actions of its em-

ployees might also have been a proximate cause of the accident, and, in comparison with Kostka's negligence, might have been of a more serious degree. ██ As stated in *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 381:

"In attempting to set a standard by which to guide the trier of fact in determining what conduct would preclude recovery for indemnity, the *San Francisco Unified Sch. Dist.* case [*S. F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.,* 162 Cal. App.2d 434 (328 P.2d 785)] reduced the factual determination to the ascertainment as to 'whether the conduct . . . *helped* to bring about the damage' to the injured person. (P. 449; emphasis added.) In the instant case, the trial court adopted this language when it instructed the jury that Cahill [the corporate plaintiff seeking indemnity] could not recover if its conduct 'helped bring about the damage complained of by William Hull. . . .' Webster defines the verb 'help' to mean '[t]o aid; assist.' Among its synonyms are: strengthen, support, sustain, and further. To help implies cooperation or a combination of effort. (Webster's Dictionary of Synonyms.) *The crux of the inquiry is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law.* [Citations.]" (Italics added.)

In *American Can Co.* v. *City & County of San Francisco,* 202 Cal.App.2d 520 [21 Cal.Rptr. 33], a plaintiff also sought to apply the theory of implied indemnity to recover for the damages sought against it as the result of the imputed negligence of its employee, a bus driver, that had contributed to the injury of certain of the defendant's employees. The trial court granted the defendant's motion to strike the complaint. This order was affirmed upon appeal, the court stating as follows at page 526:

"Appellants' complaint does not allege that respondent owed a different kind of obligation to the injured employees or that respondent's breach of duty was of a different nature than appellants'. The complaint, when viewed most favorably, merely asserts that respondent's tower truck was improperly parked; that respondent's buses were located so as to conceal the truck from view; and that respondent failed to provide a flagman or barricades to direct traffic around the truck. Even if it can be assumed that these omissions on respondent's part were far more negligent than appellant

driver's act of proceeding into an intersection despite the fact that his view was impaired by a trolley bus, there is a complete absence of any facts showing that respondent's duty to the injured employees was any greater than appellants', or that there was any special relationship between respondent and appellants which would give rise to a duty of indemnity. On the contrary, the facts alleged in the complaint merely reveal that the concurring negligence of the two parties resulted in certain injuries to Murphy and Jones. Appellants' complaint thus falls squarely within the common-law rule against contribution or indemnity between joint tortfeasors.''

Similarly, in *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, Cahill, the corporate plaintiff, sought and was granted recovery under the theory of implied indemnity for the damages it had been forced to pay as the result of the negligence of its employee Larkin. In reversing this judgment, the court stated at page 382:

''The evidence in this case unerringly points to participation on the part of Cahill which went beyond nonaction and the mere failure to perform the duty to Hull [the injured party] which the law imposed on Cahill, i.e., the failure to act in fulfillment of the duty of care which devolved upon it as a general contractor. *The actions and knowledge of Larkin in the course and scope of his employment for Cahill are imputed to the latter.* ... Under the state of the facts we are impelled to find that as a matter of law Cahill partook consciously and actively in the wrong to Hull. This is the only reasonable hypothesis that can be drawn from the evidence and the uncontradicted facts and the only conclusion which reasonable men could draw. Accordingly, the question as to whether Cahill actively participated in the affirmative act of negligence which caused the injury to Hull should not have been submitted to the jury. [Citations.]'' (Italics added.)

In the instant case, plaintiff's pleading affirmatively alleges that negligent actions of its employee Kostka have been judicially imputed to it as the general employer. This conclusion appears to be in accord with the following rule declared in section 227 of the Restatement of Agency and quoted with approval in *Lowell* v. *Harris,* 24 Cal.App.2d 70, 78 [74 P.2d 551]:

'' 'A continuance of the general employment is also indicated in the operation of a machine where the general em-

ployer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be intent to retain control over the instrumentality.' ''

In the instant case both plaintiff and defendant are corporations, and, therefore, in a literal sense can never be guilty of ''actual'' negligence, active or passive, except to the extent that the acts of their agents, servants and employees are imputable and chargeable to them. Plaintiff's complaint reveals that it was ''present'' upon the scene when Carnahan was injured through the presence of its employee, Kostka, whom it had selected to protect its interests in the operation of its machine. Kostka, as plaintiff's representative, presumably knew more about the operation of the leased machine than defendant's employees, and if he was not in the special employ of the defendant, he certainly was under no duty to carry out instructions that would cause the machine to be operated in an unsafe manner or place.

Contrary to appellant's contentions, the character of the negligence of an employee which is imputed to his employer is not transmuted by the exercise of the imputative process. Imputed liability is not the equivalent of liability arising from passive negligence. If such were the rule, then all liability arising under the doctrine of *respondeat superior* would become the basis for an action for indemnification, because the active negligence of the employee, with which the employer is chargeable, would automatically be converted into the passive negligence of the latter by the mere application of the doctrine.

Since plaintiff's complaint affirmatively alleges that it has been judicially determined that the liability for which it seeks indemnification resulted from the ''negligent acts and omissions of [its employee] Kostka during the time Kostka was operating [its] machine, . . .'' it must be held as a matter of law that it participated ''in the conduct or omission which caused the injury beyond the mere failure to per-

form the duty imposed upon [it] by law.'' (*Cahill Bros., Inc.* v. *Clementina Co., supra,* at p. 381.)

The judgment is affirmed.

Roth, J., concurred.

ASHBURN, J.,* Dissenting.—Unable to concur in the prevailing opinion I now set forth my reasons.

This is an action for recovery of implied indemnity against liability growing out of a personl injury, commonly known as indemnity between joint tort feasors. The court sustained without leave a general demurrer to plaintiff's original complaint and thereafter denied plaintiff's motion for leave to file an amended complaint which was tendered with the motion. Of course it was not necessary for appellant to ask for leave at the time of the ruling, which in this instance was made in the absence of counsel (Code Civ. Proc., § 472c) and failure to grant such subsequent motion is error unless it plainly appears that the complaint cannot be successfully amended. (*Lemoge Electric* v. *County of San Mateo,* 46 Cal. 2d 659, 664 [297 P.2d 638]; *Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 107 [280 P.2d 1].) It thus becomes incumbent upon us to review the ruling in the light of the proposed amendment plus the possibility of further amendment if that be necessary to statement of a cause of action. Hence we quote freely from that proffered complaint, thus testing its sufficiency to state a cause of action and to require granting of leave to file it.

Plaintiff corporation was in the business of renting to others construction equipment and machinery. On September 23, 1958, it rented to defendant Macco Corporation, for use upon a construction job it was doing, a certain back-hoe machine and operator, one Robert Kostka. ''. . . That said contract imposed an affirmative duty by law on defendant Macco to direct the use of the said operated machine equipment in a reasonably safe manner and for the purpose for which said machine was intended under reasonably safe working conditions and surroundings in a manner so as not to endanger third parties.'' (A conclusion of law, but innocuous because it is a correct statement which would enter into the complaint even if not expressly averred.) Upon

*Retired Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.

delivery of the machine and arrival of Kostka "defendant Macco assumed full and exclusive direction of the control and use of said machine and assumed full and exclusive supervision and direction of Kostka, in his operation of said machine. . . .

"That said defendant Macco thereafter utilized said machine, and supervised and directed Kostka in his operation of said machine in the performance of certain excavation work then and there being performed by defendant Macco as contractor on the project; and that contrary to the duties owing to plaintiff and in breach thereof planned, supervised and directed performance of an unsafe and dangerous method of operation using the said machine and operator in a manner for which it was not intended and excavating to a depth beyond its capacity for safe operation, further hazard was created by directing the spoil pile of excavated dirt be built up in an unsafe and unprotected manner illegal under applicable safety orders of the Division of Industrial Safety, State of California, and at the time of the accident referred to hereinafter, the defendant Macco had directed one of their employees, one Ira Earl Carnahan, to get into said excavation and work at the bottom, while said back-hoe machine was in operation, creating dangerous, unsafe and illegal, according to the applicable safety orders of the Division of Industrial Safety, State of California, work conditions endangering the life and limb of said Carnahan. . . .

"That on or about September 23, 1958, while said machine and operator were being directed, supervised, controlled and used by defendant Macco in the unwarranted method of operation, and under the unsafe, hazardous and illegal conditions above mentioned and as a primary cause thereof, said Carnahan sustained injuries and damages."

Carnahan sued Horn and Barker, Inc., recovered judgment for $103,000, which was settled for $67,500 paid by Horn and Barker, Inc., to Carnahan. Plaintiff seeks recovery from Macco of said sum of $67,500 plus certain attorney fees and costs.

The proposed amended complaint further says:

"The liability of plaintiff for Carnahan's injury and damage, as determined by the judgment in said action, resulted from no actual fault of, or misfeasance by, plaintiff, but arose vicariously as a result of its relationship as employer of Kostka and the primary cause of the said injury and damage to Carnahan was the unsafe improper use of the operator and

machine under a plan and method of operation creating unsafe, dangerous working conditions, put into effect, directed and supervised by defendant Macco in breach of its contractual obligations to plaintiff.''

Plaintiff's allegations plainly are intended to spell a special employment of Kostka by Macco subjecting him to the exclusive control of the latter and relieving Horn and Barker, Inc., of responsibility for his negligence while working in this special employment with defendant. Under the authorities it is necessary, in order to effect that result, that right of control as distinguished from fact of control be transferred from the general to the special employer. *Billig* v. *Southern Pac. Co.*, 189 Cal. 477 [209 P. 241], establishes this proposition. The court said at page 485: ''It would appear, therefore, to be the rule in this state that when a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer insofar as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner and not that of the hirer of the instrumentality. [Citations.]'' Also at page 483, the court said: ''It [*sic*] such a situation, however, it is obvious that it is necessary to ascertain who was the master *at the very time of the negligent act complained of*. This is so for the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong *at the very time and in respect to the very thing out of which the injury arose.*'' (Italics supplied.)

*Gavel* v. *Jamison*, 116 Cal.App.2d 635, 637 [254 P.2d 47] ; ''The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong *at the very time and in respect to*

*the very thing out of which the injury arose.''* (Italics supplied.)

To the same effect, see *Doty* v. *Lacey*, 114 Cal.App.2d 73, 77-79 [249 P.2d 550]; *Carlson* v. *Sun-Maid Raisin Growers Assn.*, 121 Cal.App. 719, 727 [9 P.2d 546]; *Lowell* v. *Harris*, 24 Cal.App.2d 70, 76-77 [74 P.2d 551]; *McComas* v. *Al. G. Barnes Shows Co.*, 215 Cal. 685, 691-696 [12 P.2d 630]; *Shaff* v. *Baldwin*, 107 Cal.App.2d 81, 88 [236 P.2d 634].

The authorities are to the effect that subrogation runs against the employer, individual or corporate, whose employee has done the wrong—and against the insurer of that employer.

Obviously the pleader sought to spell out such a situation through the allegations that Macco assumed full control of Kostka's work and that Kostka at the time of the accident was engaged in violation of the law and in a negligent act under specific direction of the defendant, his employer *pro hac vice.*

It is to be remembered that we are here reviewing the allegations of a pleading and are not weighing evidence or inferences therefrom. While bald conclusions are not permissible in a pleading, an averment of an ultimate fact composed of a mixture of law and evidentiary fact does not fall in that category, nor is the court always at liberty to reject a conclusion based upon facts equally well known to both parties. *Jackson* v. *Pasadena City School Dist.*, 59 Cal.2d 867, 879 [31 Cal.Rptr. 606, 382 P.2d 878], is illustrative:

"In support of the contention that the complaint does not state a cause of action it is argued that the allegations that Washington is a racially segregated school and that the McKinley zone was gerrymandered to include the Linda Vista area within it are conclusions of law which are not admitted by demurrer. The distinction between ultimate facts and conclusions of law involves at most a matter of degree. The particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff.''

*Burks* v. *Poppy Construction Co.*, 57 Cal.2d 463, 473-474 [20 Cal.Rptr. 609, 370 P.2d 313]: "The sustaining of the demurrer to the second cause of action cannot be justified on the ground that the allegation that the housing accommoda-

tions were 'publicly assisted' was merely a conclusion of law. The distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree. ... In permitting allegations to be made in general terms the courts have said that the particularity of pleading required depends upon the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff, and that less particularity is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff.''

See also: *May* v. *Farrell*, 94 Cal.App. 703, 708 [271 P. 789]; *Goldstein* v. *Healy*, 187 Cal. 206, 212 [201 P. 462]; *Pigeon Point Ranch, Inc.* v. *Perot*, 59 Cal.2d 227, 233 [28 Cal.Rptr. 865, 379 P.2d 321].

In my opinion the proffered amended complaint fairly alleges that Kostka was at the moment of the accident acting exclusively under orders of defendant in committing the unlawful and negligent act that precipitated the accident, and that defendant was then neglecting its duty of furnishing its employee Carnahan a safe place to work. From this it follows that the special employer and not the general employer was liable to persons injured thereby. To my mind it would be little short of absurd to argue or hold that plaintiff at that moment could have intervened and forbidden Kostka's following defendant's instruction or could have discharged him from the special employment. At best, a question of fact is presented at that point.

Concerning the basis for the type of indemnity we are now discussing, it is said in Prosser on Torts (2d ed.) section 46, page 251: ''It is difficult to state any general rule or principle as to when indemnity will be allowed and when it will not. ... Probably, as is so often the case in the law of torts, no one explanation can be found which will cover all the cases; and the duty to indemnify, like so many other duties, arises where community opinion would consider that in justice the responsibility should rest upon one tortfeasor rather than another.''

*Cahill Bros., Inc.* v. *Clementina Co.*, 208 Cal.App.2d 367 [25 Cal.Rptr. 301], contains an excellent discussion of the pertinent law. The court said in part: ''The right to implied indemnity, while relatively recent in the law of California, is now well established. [Citations.] The distilled essence of these cases is that where each of two persons is made re-

sponsible by law to an injured party the one to whom the right of indemnity inures is entitled to shift the entire liability for the loss to the other party. Accordingly, a right of implied indemnification may arise as a result of contract or equitable considerations. ..." (P. 375.)

"The *American Can Co.* case [202 Cal.App.2d 520 (21 Cal.Rptr. 33)] was the first to come to grips with the question of primary and secondary liability in rejecting a claim for implied indemnity in a situation where a vehicle owned by the plaintiff, who was seeking indemnity, had struck the defendant's improperly parked truck causing injuries to two of the latter's employees, who were on said truck and who thereafter recovered damages from the plaintiff. The court there adopted the rule of primary and secondary liability announced in *Builders Supply Co.* v. *McCabe, supra,* 366 Pa. 322, 325-326 [77 A.2d 368], and cited with approval by *Alisal* [180 Cal.App.2d 69 (4 Cal.Rptr. 379)], as follows: ' " ' The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; ... It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. ... But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' " ' (P. 525 of 202 Cal.App.2d.)

"The rule was reiterated in *Pierce** [205 Cal.App.2d 264 (23 Cal.Rptr. 115)], where the court held that there is no right of indemnity in favor of a defendant who was himself

*Cited as *Haines.*

negligent and therefore primarily liable, notwithstanding that his codefendant may also have been negligent or may have been negligent to a greater degree.'' (P. 378-379.)

"It is apparent from the foregoing cases, therefore, that the right of implied indemnity in contractual cases is based upon a breach of contract by the person against whom indemnity is sought, while in the area of noncontractual indemnity the right rests upon the fault of another which has been imputed to or constructively fastened upon him who seeks indemnity.'' (P. 379-380.)

"... The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he is deprived of the right of indemnity. In other words, the person seeking indemnity cannot recover if his negligence is active or affirmative as distinguished from negligence which is passive. The courts of this state now recognize the distinction between active and passive negligence in holding that in the absence of express agreement for such indemnification the indemnitee may not recover from the indemnitor where he has been actively or affirmatively negligent.'' (P. 382.)

Whether the solution of this case depends upon "concepts of primary and secondary or active and passive tortious conduct'' (quoting *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 133, 141 [76 S.Ct. 232, 100 L.Ed. 131, 141, 145-146]) seems immaterial. In either event, plaintiff has pleaded a good cause of action. From the standpoint of primary and secondary liability, the pleading, fairly and liberally construed, discloses that defendant was Kostka's special employer, which fact exonerates plaintiff from liability to a third party (e.g. Carnahan) for negligence of one who temporarily is not acting as his employee; plaintiff, held liable to Carnahan and having discharged that liability, is entitled to indemnification from Kostka (*Bradley* v. *Rosenthal,* 154 Cal. 420, 423 [97 P. 875, 129 Am.St.Rep. 171]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 428-429 [296 P.2d 801, 57 A.L.R.2d 914]) and from his special employer *pro hac vice.* Viewing the matter from the standpoint of active or passive tortious conduct the conclusion must be the same. Defendant failed to provide a safe place to work and expressly directed the wrongful act that

injured Carnahan; plaintiff had nothing whatever to do with it, was not guilty of any negligence, not even negligence of a passive character. Hence, upon this test, plaintiff appears to be entitled to indemnification from defendant.

In further support of this conclusion, see *Montgomery Ward & Co.* v. *KPIX Westinghouse Broadcasting Co.*, 198 Cal.App.2d 759, 761 [18 Cal.Rptr. 341]; *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434, 442 [328 P.2d 785]; *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379]; *Mayer* v. *Fairlawn Jewish Center*, 38 N.J. 549 [186 A.2d 274, 279-280].

The prevailing opinion seems to find escape from these conclusions through reliance upon *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810 [122 P.2d 892][1]—the thought being that, as *Bernhard* has abolished mutuality as an essential element of res judicata, thus making a judgment admissible in evidence against any person who was a party to the action, the Carnahan judgment becomes res judicata against Horn and Baker, Inc., and convicts them of actionable negligence with respect to Carnahan. I do not think the record supports the thought that plaintiff's pleading reveals that it has been judicially determined that it, rather than defendant alone, was answerable for the negligence of its employee Kostka. I do think it clear that *Bernhard* has no such effect in this case.

We pointed out, in *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762 [327 P.2d 111], that the doctrine of res judicata rests upon public policy and will not be extended to accomplish an inequitable result.

"The Supreme Court has recognized that the public policy underlying res judicata dictates that the rule yield to considerations showing that its application would result unjustly. 'But in rare cases a judgment may not be res judicata, when proper consideration is given to the policy underlying the doctrine, and there are rare instances in which it is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy.' (*Greenfield* v. *Mather*, 32 Cal.2d 23, 35 [194 P.2d 1].)" (P. 769.)

"An examination of later rulings of the Supreme Court

[1]This is apparent from the assertions in that opinion that the determinative issue had been conclusively adjudged against plaintiff and the citation of the *Bernhard* case at the pages dealing with mutuality in the law of res judicata.

indicates that it does not entertain the view that the *Bernhard* doctrine is to be universally applied regardless of consequences.'' (P. 770.)

''It is a fair conclusion that the later rulings of the court evince no inclination to enlarge the application of *Bernard* to dissimilar situations or to give it universal import. . . .

''In determining whether this state should now depart from the stated rule (which really is an open question) the courts are required to pass upon a matter of public policy.'' (P. 772.)

''It becomes necessary in this case to declare the public policy of this state upon the application of the rule of res judicata to multiple claims of different persons for personal injuries or property damage against a single defendant or set of defendants growing out of a single accident. We hold that res judicata does not apply to those situations; that such an extension of the doctrine would be promotive of litigation and in subversion of sound principles of judicial administration looking to equal justice for all.'' (Pp. 774-775.) The Supreme Court denied a hearing.

That the *Bernard* doctrine should not be applied here because of the injustice that would result is apparent from the established rule that the cause of action of the indemnitee does not ripen '' [u]ntil the amount of the damages [is] determined by a judgment or a compromise with the injured party'' for otherwise ''the indemnitor would have no way of either measuring or discharging his duty to his indemnitee.'' (*Vegetable Oil Products Co.* v. *Superior Court*, 213 Cal.App.2d 252, 257 [28 Cal.Rptr. 555].) Under the view that *Bernhard* is applicable here the perfection of the one element necessary to a completed cause of action would destroy it. That cannot be the law.

In my opinion, the judgment should be reversed and the trial court ordered to grant leave to plaintiff to file the amended complaint heretofore tendered by it or another amended complaint, as plaintiff may elect.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1964. Peters, J., was of the opinion that the petition should be granted.